[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 924 
This action was filed by Zap Professional Photography, Inc., against George McCluney, d/b/a Flash Photographic Services ("Flash"), claiming intentional interference with business and contractual relations and a civil conspiracy in furtherance thereof. Zap sought damages and injunctive relief. Flash counterclaimed, alleging illegal restraint of trade and monopolization under §§ 8-10-3 and 6-5-60, Ala. Code 1975, and intentional interference with business or contractual relations. Flash also sought both damages and injunctive relief. The trial court found against Zap on its claims for damages and injunctive relief and against Flash on its claims for damages. The trial court granted Flash's request for injunctive relief. Both parties appeal. We affirm.
At the outset we note that the evidence in this case was presented ore tenus.
 "Our standard of review under the ore tenus rule is to affirm the trial court's judgment where it is supported by the evidence or inferences that can logically be drawn from the evidence, and to reverse only if the judgment is plainly and palpably wrong by not being supported by the evidence or inferences that can be logically drawn from the evidence."
Davis v. Hester 582 So.2d 538, 540 (Ala. 1991) (citations omitted). The ore tenus rule applies only to the trial judge's factual findings on disputed evidence. Sterling Oil of Oklahomav. Pack, 291 Ala. 727, 287 So.2d 847 (1973).
Zap is a photography company based in Tuscaloosa; it has been operated by Gary Limmroth for over 20 years. Zap specializes in taking candid pictures at parties and functions put on by the various organizations, primarily fraternities and sororities, at the University of Alabama in Tuscaloosa. Zap also covers events at the University of Alabama-Birmingham, Birmingham-Southern College, Samford University, Jacksonville State University, and Mississippi State University. Zap charges no fee to have a Zap photographer at a function, and it makes money by delivering the proofs to the organization sponsoring a function and allowing its members, for a charge, to order copies of the pictures. Through the years it has become a tradition at the University of Alabama for organizations to have at least one "Zap man" at all of their parties. This provides students with photographic mementos, without requiring them to keep up with, and risk losing, their own cameras. There have been competitors through the years, but all have eventually left the market for various reasons. Zap developed, some years ago, a system by which it entered into exclusive two-year contracts with many of the fraternities and sororities. The contracts provided that the organization would not use any other photographic service and that Zap would discount its per-photo price by 10 cents. In the *Page 925 
contracts, Zap reserved the right not to photograph an event for any reason. However, there was no evidence that Zap ever refused to cover an event for a organization that was under contract.
George McCluney began photographing events while he was a student at Birmingham-Southern College. He graduated from college in 1986 and began doing event photography fulltime under the name Flash Photographic Services. He was rather successful in the Birmingham area and apparently had the majority of the market share. In Birmingham, no photographic service companies use long-term contracts. Based on his success in the Birmingham area, McCluney decided to attempt to enter the Tuscaloosa market. The Kappa Alpha fraternity in Tuscaloosa apparently was not pleased with Zap's service; it invited Flash to photograph some of its parties during 1989. Flash also did some work for Theta Chi fraternity at that time. In 1991, Flash opened an office in Tuscaloosa. After setting up shop in Tuscaloosa, Flash received a letter from Zap welcoming it to Tuscaloosa and providing Flash with a list of organizations with which Zap had an exclusive contract. Flash sent fliers to all of the fraternities and sororities in Tuscaloosa and followed up with personal contacts. Additionally, it conducted a T-shirt promotion. Despite the advertising, Flash acquired only 4.4% of the market the first year and 6.51% the second year. Flash contends that it acquired such a small percentage of the market because of Zap's exclusive contracts. Flash also alleges that Zap has a monopoly on event photography in Tuscaloosa and that its exclusive contracts act to preserve its monopoly by creating only a very short period every two years in which a competitor can vie for business. Sometimes there is no period of competition because the contracts sometimes are renewed before they expire.
While Flash was attempting to make inroads into the Tuscaloosa event photography market, there were apparently conflicts between Zap employees and Flash employees. At the University of Alabama, "swaps" are frequently held. A swap is a party given by both a fraternity and a sorority, most often at the fraternity's house rather than the sorority's house. Flash claims that at swaps where it was hired by one organization and Zap was under contract with the other, Zap would "pack" the event with its photographers, i.e., that it would send more photographers than were needed, so as to make it more difficult for Flash's photographers to take pictures and so as also to increase the likelihood that Zap would have more of the photos that the students would want to buy. After such an event, Zap would not allow Flash to place its proofs in the Zap organization's meeting places, thereby effectively preventing Flash from selling any of its pictures to the members of organizations under contract with Zap. This was particularly hard on Flash financially, because Flash tended to be hired by fraternities and Zap was under contract with virtually all of the sororities and the sorority members traditionally buy more pictures than fraternity members. Flash then told the fraternities that had hired it that it would not photograph their events if they allowed Zap photographers also to photograph them. Zap approached Flash about the problem, but Flash refused to change its position unless Zap allowed it to place proofs in the houses of Zap's contracted organizations. Zap refused to do so and filed this action.
In order to establish a prima facie case of intentional interference with a business or contractual relationship, there must be proof of each of the following:
 "(1) The existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of the defendant's interference."
Utah Foam Products, Inc. v. Polytec, Inc., 584 So.2d 1345,1352-53 (Ala. 1991).
We will first address Zap's claims against Flash. It is undisputed that Zap had contracts with many of the organizations on the campus of the University of Alabama and that Zap sent to Flash a list of the organizations with which Zap had contracted. Flash's solicitations to all of the fraternities and sororities on campus through fliers, personal *Page 926 
contact, and free T-shirts cannot be considered interference. The trial court's finding that Flash did not interfere with Zap's contractual relations when Flash informed its own fraternity clients that it would not take pictures if they allowed Zap's photographers into a party that was being co-sponsored by one of Zap's contract clients was supported by the evidence.
Flash alleges that it was entitled to damages because of what it alleges was Zap's intentional interference with Flash's business or contractual relations. Flash bases this claim on Zap's attempt to "pack" parties at which there were both Zap and Flash photographers, and Zap's removal of Flash proofs from houses of organizations that Zap had under contract. Zap did not tortiously interfere with Flash's contractual or business relations by packing parties with its own photographers. The mere presence of additional photographers does not rise to the level of interference required for liability for this tort. The presence of other photographers at a party would not prevent Flash from taking as many photographs as it wanted, and Flash likewise could have brought in additional photographers if it felt that to do so would enable it to sell more photographs after the parties. Additionally, there is no liability under this tort for Zap's refusal to allow Flash to place its proofs in the houses of organizations with which Zap had an exclusive contract. The first element of this tort is the existence of a contract or business relationship. There is no contract or business relationship between Flash and Zap's clients, only between Flash and its own clients; therefore, there was no contract or business relationship to be interfered with.
Flash also claims that Zap's actions restricted trade and monopolized the event photography industry in Tuscaloosa. Section 8-10-3, Ala. Code 1975, provides:
 "Any person or corporation, domestic or foreign, which shall restrain, or attempt to restrain, the freedom of trade or production, or which shall monopolize, or attempt to monopolize, the production, control, or sale of any commodity or the prosecution, management, or control of any kind, class, or description of business or which shall destroy, or attempt to destroy, competition in the manufacture or sale of a commodity shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than $500 nor more than $2000 for each offense."
Section 6-5-60 provides:
 "(a) Any person, firm, or corporation injured or damaged by an unlawful trust, combine or monopoly, or its effect, direct or indirect, may, in each instance of such injury or damage, recover the sum of $500 and all actual damages from any person, firm, or corporation creating, operating, aiding, or abetting such trust, combine, or monopoly and may commence the action therefor against any one or more of the parties to the trust, combine, or monopoly, or their attorneys, officers, or agents, who aid or abet such trust, combine, or monopoly."
The federal law relating to monopolization governs Alabama antitrust actions. Ex parte Rice, 259 Ala. 570, 67 So.2d 825
(1953). The trial court found that Zap has monopoly power in the relevant market — the Tuscaloosa event photography market — and that it acquired this power through business acumen and through having a superior product, which are legally permissible means. United States v. Grinnell Corp.,384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). However, the trial court also found that Zap is now willfully maintaining this monopoly power by means of the two-year exclusive-dealing contract. The reasons given by Zap for these contracts primarily involved business planning, e.g., helping Zap gauge the number of photographers needed and the amount of film to order. These interests are equally well served by one-year contracts that would not operate to maintain Zap's monopoly. We, therefore, affirm the trial court's restriction of the contracts to one-year terms.
The trial court correctly refused to award damages to Flash. Flash relies on Super Valu Stores, Inc. v. Peterson,506 So.2d 317 (Ala. 1987), to support its contention that it presented adequate proof of damage. Super Valu states the Alabama standard of proof required to recover lost profits: *Page 927 
 " 'In order that it may be a recoverable element of damages, the loss of profits must be the natural and proximate, or direct, result of the breach complained of and they must also be capable of ascertainment with reasonable, or sufficient, certainty, or there must be some basis on which a reasonable estimate of the amount of the profit can be made; absolute certainty is not called for or required.' "
Id. at 327 (emphasis omitted) (quoting Paris v. Buckner FeedMill, Inc., 279 Ala. 148, 149, 182 So.2d 880, 881 (1966)). Flash failed to establish with reasonable certainty the amount of lost profits it claimed. Flash estimated damages in the form of lost profits at $73,665. This figure was based on the assumption that Flash would have obtained 15% of the market share in its first year in Tuscaloosa and 33% in its second year, but for Zap's exclusive contracts. The only evidence to support these figures was that Flash had obtained 33.6% of the open market the first year and 38.4% the second year. However, the is no indication that Zap was actively competing with Flash for this open market business. The evidence indicates that Zap focused on its existing contracts and relied only on a telephone listing and its existing reputation to attract groups not already under contract. Additionally, Zap presented evidence that three of the major groups picked up by Flash had later left Flash because of problems with the quality of Flash's photographs and/or because of personnel problems. Thus, Flash did not establish its damages claim with reasonable certainty.
Last, we conclude that the trial court correctly refused to award Flash statutory damages under § 6-5-60, which provides in pertinent part that "[a]ny person . . . injured or damaged by an unlawful . . . monopoly . . . may, in each instance of such injury or damage, recover the sum of $500 . . . from any person, firm, or corporation creating, operating, aiding, or abetting such . . . monopoly and may commence the action therefor against any one or more of the parties to the . . . monopoly or their attorneys, officers, or agents." Damages are awarded under this section only to one injured or damaged by an unlawful monopoly. Even though the trial court found that Zap's two-year contracts were an attempt to willfully maintain its monopoly, Flash, as discussed above, failed to prove that it was injured or damaged as a result of Zap's actions. Under §6-5-60 damages are to be awarded only to those injured by an unlawful monopoly. Thus, the trial court correctly determined that Flash was not entitled to damages under this section.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES, and KENNEDY, JJ., concur.