This case concerns the propriety of the trial court's appointment of a receiver. We affirm.
 Facts and Procedural History
From 1987 to 1997, William H. Phillips was a 50% owner of Faulkner-Phillips Media, Inc., the licensee of an FM radio station in Bay Minette, Alabama. In June 1988, Phillips learned that the Federal Communications Commission ("FCC") had published a notice, inviting applications for a permit for a new FM radio station frequency in Bay Minette, Alabama. Upon learning this, Phillips telephoned the attorney who handled FCC matters for him, Washington, D.C., lawyer Barry D. Wood, for advice on the appropriate way to apply for a license for that frequency. Phillips alleges that he and Wood discussed pursuing the application for the frequency together as full partners, but that Wood *Page 650 
advised him that Wood alone should apply for the license, and conceal the existence of the partnership from the FCC. Wood disputes this, and contends that because Phillips owned a license to another frequency in south Alabama, FCC regulations prohibited Phillips from applying for, or owning, any interest in the new frequency. Therefore, Wood asserts, Phillips encouraged him to apply for the license for the new frequency. Wood maintains that the two men did not discuss a role for Phillips in the new station, much less any ownership interest.
The "filing window" for the new frequency closed in July 1988. Because the filing window closed without attracting a single application, the FCC's rules provided that the first application from a qualified candidate would receive the permit for the frequency. Wood applied for the permit under the name Baldwin Broadcasting Company, and the FCC granted a broadcast-construction permit to the Baldwin Broadcasting Company on March 15, 1990. On May 16, 1990, Wood submitted a required initial-ownership report to the FCC. In that report he certified that he was the sole owner of the Baldwin Broadcasting Company and that the company had no contracts, agreements, or other legal instruments reflecting that additional persons had any ownership rights in the company.
Although the two men dispute Phillips's role at the new station, it appears undisputed that Phillips located a studio site, hired the contractor to build the studio and the office, rented tower space for the transmission antenna, and installed the transmitter for the station. Phillips also managed the new station, hired disc jockeys and sales staff, selected a music format, and conducted initial marketing. Phillips alleges that he invested more than $130,000 in the station during his six years of managing the station. The station began broadcasting on May 15, 1993.
Wood argues that Phillips was not a partner in Baldwin Broadcasting Company; rather, he contends that Phillips was simply an employee of Baldwin Broadcasting Company. Phillips, however, alleges that he repeatedly asked Wood to formalize what he says was their partnership. It is undisputed that Wood and Phillips negotiated an employment agreement pursuant to which Phillips could receive additional compensation if the new station generated cash flow for Wood or if the new station was sold for a profit during the period of the agreement.
In the spring of 1997, AGM Nevada, LLC, offered to purchase the new station for $4,000,000. Wood alleges that, at this time, Phillips began complaining that the bonus he would receive from the sale of the station would be subject to ordinary income tax, and that, as a favor to Phillips, Wood requested a taxpayer-identification number for a partnership and submitted a federal partnership tax return showing him and Phillips as partners. On that return Wood attributed much of the station's revenue to the partnership, which he says did not exist as an entity. In his version of the events that took place during this period, Phillips contends that in 1997 he was finally able to convince Wood to formally recognize their partnership and that Wood filed, under penalty of perjury, a tax return for the partnership, Baldwin Broadcasting Company, that same year. The sale of the station to AGM Nevada was never completed; however, AGM Nevada sold one of its radio stations to Baldwin Broadcasting Company.
In 1999, Cumulus Broadcasting Company approached Phillips about purchasing the two radio stations in Bay Minette owned by Baldwin Broadcasting Company for $6,000,000. As the result of negotiations, *Page 651 
Phillips was able to increase the purchase price to $8,075,000, and a letter of intent was drafted. The letter of intent was signed by Phillips as the operating partner, by Wood as president of Baldwin Broadcasting Company, and by Cumulus as the prospective purchaser.
Phillips contends that Wood first began denying the existence of the partnership and began trying to force Phillips out of the business after the letter of intent for the sale of the stations to Cumulus Broadcasting Company was signed. However, Wood contends that in late 1998 he learned that Phillips had written himself extra paychecks and had effectively given himself an unauthorized $3,000 per month raise.
Wood states that he first received notice that Phillips was claiming that the two men had formed a partnership in mid-May 1999, when he received a letter from Phillips's attorney. Wood says that upon receiving this letter, he attended a meeting with Phillips and his attorneys in Mobile, at which Wood indicated he was terminating Phillips's employment for cause. However, Wood says, Phillips convinced him to "suspend" the termination while the two men attempted to resolve their differences. Wood says that after that meeting he increased his scrutiny of Phillips's activities. After discovering that Phillips had held himself out as an owner of the station, had made certain unauthorized personnel changes, and had changed the program format without Wood's approval, Wood terminated Phillips's employment on September 13, 1999.
On September 16, 1999, Phillips filed a complaint in the Circuit Court of Mobile County. Phillips's complaint alleged that he held an ownership interest in the stations and that Wood, doing business as Baldwin Broadcasting Company, had breached the oral partnership agreement between the two men, had misrepresented the actual nature of their relationship, and had breached his fiduciary duty to Phillips, as a partner.
After terminating Phillips's employment, Wood assumed the managerial role of the two stations. After Wood took over, the stations' advertising revenues significantly decreased. Because the value of the stations was declining under Wood's management, Phillips petitioned the trial court to appoint a receiver on September 11, 2000. Following a five-day hearing in which ore tenus evidence was presented, the trial court granted Phillips's motion and appointed a receiver on November 1, 2000. Only two days later, on November 3, 2000, Wood filed a petition in bankruptcy in the United States District Court for the Eastern District of Virginia. Although Phillips states that Wood filed the bankruptcy petition to avoid the appointment of a receiver, the bankruptcy petition is not included in the record. As a result of the pending bankruptcy proceeding in Virginia, the circuit court's decision to appoint a receiver was automatically stayed until the Virginia court lifted the stay in mid-December 2000.
On December 13, 2000, Wood moved the trial court to reconsider its order appointing a receiver, or, in the alternative, to enter an order requiring the receiver to post bond in the amount of $6,000,000. Although the trial court denied Wood's motion for reconsideration, it ordered the receiver to post a bond of $25,000 and Phillips to post a bond of $100,000. The trial court also directed the receiver to file an application with the FCC for consent to the assignment of the license before he assumed control of the stations. Wood submitted to the FCC an objection to the assignment on January 12, 2001. Following the trial court's denial of his motion for reconsideration, Wood appealed the trial court's ruling. Although *Page 652 
this appeal was pending, on March 2, 2001, the trial court purported to terminate the receivership.[1]
 Analysis
The trial court appointed a receiver after hearing ore tenus evidence over a five-day period. Thus, "`[o]ur standard of review under the oretenus rule is to affirm the trial court's judgment where it is supported by the evidence or inferences that can logically be drawn from the evidence, and to reverse only if the judgment is plainly and palpably wrong.'" McCluney v. Zap Prof'l Photography, Inc., 663 So.2d 922, 924
(Ala. 1995) (quoting Davis v. Hester, 582 So.2d 538, 540 (Ala. 1991)).
Section 6-6-620, Ala. Code 1975, recognizes a court's power to appoint a receiver in a pending action.[2] Carter v. State ex rel. BullockCounty, 393 So.2d 1368, 1371 (Ala. 1981). "`"The appointment of a receiver rests in the sound discretion of the trial judge, subject to review for an abuse of that discretion."'" C.E. Dev. Co. v. Kitchens,288 Ala. 660, 667, 264 So.2d 510, 516 (1972) (quoting American ArmedServices Underwriters, Inc. v. Atlas Ins. Co., 268 Ala. 637, 108 So.2d 687
(1958), quoting in turn Henry v. Ide, 209 Ala. 367, 373, 96 So. 698, 704
(1923)). Accordingly, we will not reverse a trial court's appointment of a receiver, except in a clear case of abuse of discretion. Id.
On appeal, Wood presents four arguments: (1) that any ownership interest Phillips asserts as a result of the partnership with Wood was not enforceable because the partnership, if one existed, would have been illegal, (2) that the trial court failed to articulate a legal or factual basis for its appointment of a receiver, (3) that in appointing a receiver the trial court failed to consider the effect of intervening evidence — the filing of the bankruptcy petition — which would serve to protect the stations from financial collapse, and (4) that the trial court failed to require an adequate amount as a bond for the receiver and for Phillips.
Appointment of a receiver is an extraordinary remedy, and a receiver should not be appointed "unless there is a clear legal right to be protected, no other adequate remedy, and a showing that the complainants will otherwise sustain irreparable damage." Carter v. State ex rel.Bullock County, 393 So.2d at 1371. In his motion to appoint a receiver, Phillips argued that a partnership existed, that he and Wood were the partners in the partnership, that the radio stations had experienced a significant financial decline since Phillips was terminated, and that, without intervention, the stations were in danger of financial collapse. However, in his brief to this Court, Wood asserts that Phillips had no rights arising out of a partnership because the alleged partnership was illegal, thereby making Phillips's claims unenforceable. Thus, we must consider *Page 653 
whether the trial court abused its discretion in finding that Phillips had established a likelihood that he would prevail on his claim that a partnership existed between him and Wood.
"There is no settled test for determining the existence of a partnership. That determination is made by reviewing all the attendant circumstances, including the right to manage and control the business."Vance v. Huff, 568 So.2d 745, 748 (Ala. 1990). The parties here presented conflicting evidence regarding the intent to form a partnership. Phillips maintains that when he first spoke with Wood, the two men formulated a plan to apply to the FCC for the available frequency and to run the radio station as partners. Conversely, Wood contends that Phillips knew he could not apply for the frequency because he owned another radio station in Bay Minette, that Phillips encouraged Wood to apply for the license, and that Phillips never requested an ownership interest in the new station.
Although the evidence regarding the existence of a partnership was conflicting, the fact that Phillips assumed a managerial role at the stations appears to be undisputed. In the initial phase of the radio station, Phillips was responsible for locating a studio site, hiring the contractor to construct the studio and the office, leasing tower space for the transmission antenna, and installing the transmitter for the station. Once the radio-station building had been constructed, Phillips remained in a managerial role by hiring disc jockeys and sales staff, making all staff decisions, selecting a music format for the station, and conducting the initial marketing.
While no written partnership agreement was ever executed, it is undisputed that Wood agreed to, and did, file a federal partnership tax return in 1997. Wood contends that he filed the partnership tax return as a favor to Phillips, and he maintains that he would not have agreed to form a partnership with Phillips for the purpose of applying for an FCC broadcast license for the new frequency because to do so would violate FCC regulations. Essentially, Wood asserts that he would not have performed an illegal act — forming a partnership with Phillips to apply for the FCC license — while he admits that he filed a federal tax return indicating the existence of a partnership, under penalty of perjury, while simultaneously contending that no partnership ever existed.
Having reviewed the evidence submitted to the trial court regarding the existence of a partnership, we cannot say that the trial court abused its discretion in finding that Phillips had established a likelihood that he would prevail on his partnership claim.
Wood next argues that the trial court's order appointing a receiver should be reversed because, he says, the trial court failed to articulate a legal or factual basis for appointing a receiver. The basis of Wood's contention seems to be that the trial court's order did not state the facts upon which it determined that Phillips had satisfied the criteria that he would likely prevail on his partnership claim.
In its order granting Phillips's motion to appoint a receiver, the trial court stated:
 ". . . Phillips does not seek an interim adjudication whether a partnership exists, but asserts that a receiver should be appointed if (1) the likelihood exists that his claim of a partnership will prevail, and (2) that irreparable harm will be caused the partnership assets in the interim unless a competent, impartial receiver is placed in charge until final adjudication.
 ". . . After careful consideration of the testimony and the exhibits, the Court finds that plaintiff/counterdefendant Phillips has met the criteria established *Page 654 
 for appointment of a receiver and now ORDERS AND DIRECTS that a receiver be appointed pursuant to Section 6-6-620 et seq., Code of Alabama 1975, or other applicable rule."
Based on the record before us, we cannot say that the trial court's order constitutes reversible error. The trial court's order recognizes the requirements that Phillips had to satisfy in order for a receiver to be appointed and states that Phillips has met those requirements through the ore tenus evidence presented to the trial court. Wood cites no case that requires a trial court's order appointing a receiver to specifically enumerate the findings of fact upon which its decision is based; rather, his arguments appear to further belabor the point that he believes Phillips failed to present evidence indicating the existence of a partnership. Because we have already concluded that the trial court did not abuse its discretion in finding that Phillips had presented adequate evidence indicating that a partnership existed, we find no merit in this argument.
Wood also argues that the trial court erred in denying his motion for reconsideration of the decision to appoint a receiver because, he says, the trial court failed to consider "new evidence" or "intervening events" that made the appointment of a receiver unnecessary. Specifically, Wood contends that because he had filed a bankruptcy petition, the financial interests of the purported partnership would have been adequately protected by the bankruptcy trustee. Although Wood quotes Hayes v. JasperLand Co., 147 Ala. 340, 345, 41 So. 909, 910 (1906), for the proposition that a receiver is not warranted "if any other remedy will afford adequate protection to the party applying," his argument is disingenuous. It is undisputed that Wood filed for bankruptcy protection only two days after the trial court had issued its order appointing a receiver. Moreover, Wood filed his bankruptcy petition on the very day the trial court had scheduled a hearing for the parties to suggest an appropriate receiver. Accordingly, we cannot say that the trial court abused its discretion in denying Wood's motion for reconsideration of its decision to appoint a receiver.
Finally, Wood alleges that the trial court erred to reversal by failing to require an adequate amount as a bond for the receiver and for Phillips. In his motion for reconsideration, Wood requested that the trial court require both the appointed receiver and Phillips to post a bond because, he argued, the value of the radio stations was at risk upon the assumption of control of the stations by a nonowner. The trial court ordered Phillips to enter into a bond, with surety, in the amount of $100,000 payable to Wood; the trial court further ordered the receiver, Dewey H. Long, Jr., to secure a bond payable to Wood in the sum of $25,000. Wood's argument is simply that the bond amounts required by the trial court were insufficient to protect the financial interests of the stations and that the trial court should have established bond amounts that bore some reasonable relationship to the value of the stations. Wood provides no authority upon which this Court might consider this issue. Accordingly, we cannot say that the bond amounts required by the trial court constituted an abuse of the trial court's discretion.
For the foregoing reasons, the trial court's order appointing a receiver is affirmed.
AFFIRMED.
Moore, C.J., and See, Harwood, and Stuart, JJ., concur.
[1] Phillips has filed a motion to dismiss this appeal as moot, based upon the trial court's March 2, 2001, order terminating the receivership. However, once the appeal was filed in this action, jurisdiction vested with this Court. Thus, the trial court was without jurisdiction to terminate the receivership. See Delview Meadow Gold Div. Beatrice FoodsCo. v. Alabama Dairy Comm'n, 383 So.2d 511, 515 (Ala. 1978).
[2] Section 6-6-620, Ala. Code 1975, provides:
 "Receivers may be appointed by the circuit court judge and by the register or clerk in the absence of the judge, upon application in writing. When the application is made to the register or clerk, reasonable notice of the time of such application and the person to whom it will be submitted must be given, or a good reason shown to the register or clerk for the failure to give the same." *Page 655