849 So.2d 951 (2002)
Barry WOOD d/b/a Baldwin Broadcasting Company
v.
William H. PHILLIPS.
1002091.
Supreme Court of Alabama.
November 8, 2002.
*952 Steven L. Nicholas and Michael A. Youngpeter of Olen, Nicholas & Copeland, P.C., Mobile, for appellant.
Thomas Troy Zieman, Jr., Anthony M. Hoffman, and Robin B. Taylor, of Zieman, Speegle, Jackson & Hoffman, L.L.C., Mobile, for appellee.
PER CURIAM.
This case involves a dispute between Barry Wood and William H. Phillips over the ownership of FM radio broadcast stations WAVH in Daphne and WZEW in Fairhope. The central question presented is whether there was sufficient evidence to show, as the jury determined in answers to special interrogatories, that a partnership *953 was created in December 1992, between Wood and Phillips. This is the second time this case has been before this Court. See Wood v. Phillips, 823 So.2d 648 (Ala. 2001) ("Wood I"), where this Court affirmed an order of the trial judge appointing a receiver. Because we find that there was insufficient evidence to show that a partnership was created in December 1992, as determined by the jury in answer to special interrogatories, we reverse and remand.

Facts
As stated above, this is the second time this case has been before this Court. In Wood I this Court, in affirming the trial court's order appointing a receiver, summarized the facts pertinent to the case, as follows:
"From 1987 to 1997, William H. Phillips was a 50% owner of Faulkner-Phillips Media, Inc., the licensee of an FM radio station in Bay Minette, Alabama. In June 1988, Phillips learned that the Federal Communications Commission (`FCC') had published a notice, inviting applications for a permit for a new FM radio station frequency in Bay Minette, Alabama. Upon learning this, Phillips telephoned the attorney who handled FCC matters for him, Washington, D.C., lawyer Barry D. Wood, for advice on the appropriate way to apply for a license for that frequency. Phillips alleges that he and Wood discussed pursuing the application for the frequency together as full partners, but that Wood advised him that Wood alone should apply for the license, and conceal the existence of the partnership from the FCC. Wood disputes this and contends that because Phillips owned a license to another frequency in south Alabama, FCC regulations prohibited Phillips from applying for, or owning, any interest in the new frequency. Therefore, Wood asserts, Phillips encouraged him to apply for the license for the new frequency. Wood maintains that the two men did not discuss a role for Phillips in the new station, much less any ownership interest.
"The `filing window' for the new frequency closed in July 1988. Because the filing window closed without attracting a single application, the FCC's rules provided that the first application from a qualified candidate would receive the permit for the frequency. Wood applied for the permit under the name Baldwin Broadcasting Company, and the FCC granted a broadcast-construction permit to the Baldwin Broadcasting Company on March 15, 1990. On May 16, 1990, Wood submitted a required initial-ownership report to the FCC. In that report he certified that he was the sole owner of the Baldwin Broadcasting Company and that the company had no contracts, agreements, or other legal instruments reflecting that additional persons had any ownership rights in the company.
"Although the two men dispute Phillips's role at the new station, it appears undisputed that Phillips located a studio site, hired the contractor to build the studio and the office, rented tower space for the transmission antenna, and installed the transmitter for the station. Phillips also managed the new station, hired disc jockeys and sales staff, selected a music format, and conducted initial marketing. Phillips alleges that he invested more than $130,000 in the station during his six years of managing the station. The station began broadcasting on May 15, 1993.
"Wood argues that Phillips was not a partner in Baldwin Broadcasting Company; rather, he contends that Phillips was simply an employee of Baldwin Broadcasting Company. Phillips, however, alleges that he repeatedly asked *954 Wood to formalize what he says was their partnership. It is undisputed that Wood and Phillips negotiated an employment agreement pursuant to which Phillips could receive additional compensation if the new station generated cash flow for Wood or if the new station was sold for a profit during the period of the agreement.
"In the spring of 1997, AGM Nevada, LLC, offered to purchase the new station for $4,000,000. Wood alleges that, at this time, Phillips began complaining that the bonus he would receive from the sale of the station would be subject to ordinary income tax, and that, as a favor to Phillips, Wood requested a taxpayer-identification number for a partnership and submitted a federal partnership tax return showing him and Phillips as partners. On that return Wood attributed much of the station's revenue to the partnership, which he says did not exist as an entity. In his version of the events that took place during this period, Phillips contends that in 1997 he was finally able to convince Wood to formally recognize their partnership and that Wood filed, under penalty of perjury, a tax return for the partnership, Baldwin Broadcasting Company, that same year. The sale of the station to AGM Nevada was never completed; however, AGM Nevada sold one of its radio stations to Baldwin Broadcasting Company.
"In 1999, Cumulus Broadcasting Company approached Phillips about purchasing the two radio stations in Bay Minette owned by Baldwin Broadcasting Company for $6,000,000. As the result of negotiations, Phillips was able to increase the purchase price to $8,075,000, and a letter of intent was drafted. The letter of intent was signed by Phillips as the operating partner, by Wood as president of Baldwin Broadcasting Company, and by Cumulus as the prospective purchaser.
"Phillips contends that Wood first began denying the existence of the partnership and began trying to force Phillips out of the business after the letter of intent for the sale of the stations to Cumulus Broadcasting Company was signed. However, Wood contends that in late 1998 he learned that Phillips had written himself extra paychecks and had effectively given himself an unauthorized $3,000 per month raise.
"Wood states that he first received notice that Phillips was claiming that the two men had formed a partnership in mid-May 1999, when he received a letter from Phillips's attorney. Wood says that upon receiving this letter, he attended a meeting with Phillips and his attorneys in Mobile, at which Wood indicated he was terminating Phillips's employment for cause. However, Wood says, Phillips convinced him to `suspend' the termination while the two men attempted to resolve their differences. Wood says that after that meeting he increased his scrutiny of Phillips's activities. After discovering that Phillips had held himself out as an owner of the station, had made certain unauthorized personnel changes, and had changed the program format without Wood's approval, Wood terminated Phillips's employment on September 13, 1999.
"On September 16, 1999, Phillips filed a complaint in the Circuit Court of Mobile County. Phillips's complaint alleged that he held an ownership interest in the stations and that Wood, doing business as Baldwin Broadcasting Company, had breached the oral partnership agreement between the two men, had misrepresented the actual nature of their relationship, and had breached his fiduciary duty to Phillips, as a partner.

*955 "After terminating Phillips's employment, Wood assumed the managerial role of the two stations. After Wood took over, the stations' advertising revenues significantly decreased. Because the value of the stations was declining under Wood's management, Phillips petitioned the trial court to appoint a receiver on September 11, 2000. Following a five-day hearing in which ore tenus evidence was presented, the trial court granted Phillips's motion and appointed a receiver on November 1, 2000. Only two days later, on November 3, 2000, Wood filed a petition in bankruptcy in the United States District Court for the Eastern District of Virginia. Although Phillips states that Wood filed the bankruptcy petition to avoid the appointment of a receiver, the bankruptcy petition is not included in the record. As a result of the pending bankruptcy proceeding in Virginia, the circuit court's decision to appoint a receiver was automatically stayed until the Virginia court lifted the stay in mid-December 2000.
"On December 13, 2000, Wood moved the trial court to reconsider its order appointing a receiver, or, in the alternative, to enter an order requiring the receiver to post bond in the amount of $6,000,000. Although the trial court denied Wood's motion for reconsideration, it ordered the receiver to post a bond of $25,000 and Phillips to post a bond of $100,000. The trial court also directed the receiver to file an application with the FCC for consent to the assignment of the license before he assumed control of the stations. Wood submitted to the FCC an objection to the assignment on January 12, 2001. Following the trial court's denial of his motion for reconsideration, Wood appealed the trial court's ruling...."
823 So.2d at 649-51. These facts were gleaned from the record as it existed after the trial court's five-day ore tenus hearing on the issue of the appointment of a receiver.
This Court released its opinion in Wood I on December 21, 2001.[1] While the appeal from the order appointing a receiver in Wood I was pending, a jury trial was held in this case. The trial lasted from March 19, 2001, to April 5, 2001. The jury returned a special verdict, answering special interrogatories submitted by the court as permitted by Rule 49(b), Ala. R. Civ. P., finding that a partnership had been created between Wood and Phillips in December 1992, and that Phillips's interest in the partnership, as of September 13, 1999, was 40%.
One of the critical questions presented by this appeal is the effect of an "employment agreement" dated December 30, 1992 ("the employment agreement"), in which Phillips was identified as the manager and "Baldwin Broadcasting Company, a sole proprietorship," was identified as the employer. The employment agreement, among other things, set forth the duties Phillips was to perform as manager of the stations and the salary he would receive. The employment agreement also provided for an incentive salary to Phillips based on the station's net income and further provided *956 that, in the event the stations were sold, Phillips would receive the greater of $30,000 or 30% of the net proceeds of the sale. The employment agreement contained a so-called merger clause; that clause stated:
"This Agreement contains the entire agreement and understanding between the parties and integrates all prior discussions between them with respect to the subject matter hereof. This Agreement does not create a partnership between the parties."
The complaint filed by Phillips consisted of four counts. Count one alleged a breach of contract in failing to pay Phillips the incentive payments provided for in the employment agreement. Counts two and three alleged misrepresentation and breach of contract, respectively, based on Wood's alleged representations that Phillips would be given an ownership interest in the stations. Count four alleged that Wood had breached his fiduciary duty by promising Phillips that he would be given an ownership interest in the stations based on the attorney-client relationship between Phillips and Wood, as well as their relationship as "de facto (if not on paper) partners."
Wood answered the complaint, and counterclaimed, alleging eight causes of action against Phillips. In his counterclaim, Wood alleged that Phillips had violated the Alabama Trade Secrets Act; that he had interfered with Wood's contractual and business relations; that he had conspired to misappropriate items for his personal benefit; that he had converted corporate funds; that he had defamed Wood and had thereby damaged Wood's reputation; that he had negligently discharged his duties under the employment agreement; that he had wantonly discharged his duties under the employment agreement; and that he had breached the employment agreement.
On September 12, 2000, Phillips amended his complaint to add count five, in which he alleged that Wood had breached a duty of due care that, he asserted, Wood owed "to the Partnership and Mr. Phillips, the partner." Phillips also alleged in count five that Wood violated his obligation of good faith and fair dealing that partners owe each other.
On March 20, 2001, during the first day testimony was taken in the trial of this case, Phillips dismissed count one of his complaint, pertaining to the incentive payments he claimed were due him pursuant to the provisions of the employment agreement.
At the close of Phillips's case, Phillips filed a motion to amend the pleadings to conform to the evidence; the trial court granted the motion. Count three was then amended to include a claim that the parties' actions had created a partnership and that Phillips had been expelled from the partnership in September 1999, when his employment was terminated, creating a dissolution of the partnership.
Also at the close of Phillips's case, Wood filed a motion for a judgment as a matter of law; in that motion he asserted that Phillips's claim that a partnership had been created was barred because any such partnership would be illegal as having been created to mislead to the FCC. Wood also asserted that there was insufficient evidence as a matter of law to support Phillips's claim as to the existence of a partnership. At the close of all of the evidence, Wood filed a second motion for a judgment as a matter of law, in which he reasserted the claims he had previously made in his first motion for a judgment as a matter of law. The trial court denied both motions.
*957 At the conclusion of the trial, the trial court submitted three interrogatories and two verdict forms to the jury, and the jury returned a verdict finding that a partnership, in which Phillips was a partner, was formed in December 1992, and that as of September 13, 1999, Phillips's interest in the partnership was 40%. The jury also found for Wood on Phillips's misrepresentation claim and found for Phillips on Wood's defamation and breach-of-contract claims.
Subsequently, Wood timely filed a motion for a judgment as a matter of law, or, in the alternative, for a new trial. On July 18, 2001, the trial court issued an order, which the trial court amended on September 5, 2001. In the amended order, which it made final pursuant to the provisions of Rule 54(b), Ala. R. Civ. P., the trial court denied Wood's motion for a judgment as a matter of law, or, in the alternative, for a new trial. Wood appealed.

Standard of Review
This Court recently stated the standard of review for the denial of a motion for a judgment as a matter of law in Liberty National Life Insurance Co. v. Daugherty, 840 So.2d 152 (Ala.2002):
"`"A judgment as a matter of law is proper only where there is a complete absence of proof on a material issue or where there are no controverted questions of fact on which reasonable people could differ and the moving party is entitled to a judgment as a matter of law."' Southern Energy Homes, Inc. v. Washington, 774 So.2d 505, 510-11 (Ala. 2000), quoting Locklear Dodge City, Inc. v. Kimbrell, 703 So.2d 303, 304 (Ala. 1997). In reviewing the denial of a motion for a judgment as a matter of law, this Court is required to view the evidence in a light most favorable to the nonmovant. Kmart Corp. v. Kyles, 723 So.2d 572, 573 (Ala.1998). Therefore, where the evidence in the record is disputed, we present it in a light most favorable to Daugherty."
840 So.2d at 156.
The trial court also denied Wood's alternative motion for a new trial. We set out our scope of review in such a case in Acceptance Insurance Co. v. Brown, 832 So.2d 1, 12 (Ala.2001):
"The denial of a motion for a new trial is within the sound discretion of the trial court. Williams v. Williams, 786 So.2d 477, 479 (Ala.2000) (citing Hill v. Cherry, 379 So.2d 590 (Ala.1980))."

Discussion
We first consider Wood's argument that the trial court erred in denying his motion for a judgment as a matter of law, because, he says, Phillips did not present evidence of a contract establishing a partnership between him and Phillips and that Phillips should not have been permitted to present any evidence as to whether a partnership was created, on the ground that the employment agreement contained a merger clause and that the admission of any evidence relating to an alleged partnership agreement would violate the provisions of the parol evidence rule. Wood argued before the trial court, and he argues on appeal, that the employment agreement, which specifically states, "This Agreement does not create a partnership between the parties," contained the entire agreement of the parties.
Although Wood concedes that evidence of the existence of an alleged partnership agreement was properly admitted on the question of whether he had made certain misrepresentations to Phillips, he nevertheless says that once the jury found in his favor on Phillips's misrepresentation claim, the jury should not have considered such *958 evidence in deciding whether a partnership was in fact created.
Phillips argues in his brief to this Court, that once he dismissed count one of his complaint, he asserted no claim whatsoever under the employment agreement and that the jury was free to consider all the evidence relating to the formation of a partnership under count three of his complaint, where he asserted that "Wood's promises to [him] that [he] would be made an owner of WAVH and that he would be made an owner of WZEW constituted a contract between defendants and [him]."
Phillips further argues that the record shows that in count three of his complaint he claimed that there was a separate oral agreement to create a partnership and that the provisions of the employment agreement were not controlling. He argues that the evidence offered to prove the oral agreement to create a partnership was not offered to interpret the employment agreement, but rather was offered to prove a separate and entirely different oral agreement to create a partnership.
In arguing that the trial court erred in refusing to grant his motion for a judgment as a matter of law, Wood states the following in his brief to this Court:
"The trial court erred by denying Wood's motion for a JML [judgment as a matter of law] as to the jury's verdict finding a partnership between Wood and Phillips originating in December 1992. Phillips asserted that he and Wood entered into an oral partnership beginning in 1988 concerning the subject radio stations. Phillips repeatedly testified that the partnership he was seeking to establish originated in 1988. The jury rejected Phillips' claim of a 1988 partnership, but the jury determined that a partnership was created in December 1992.
"....
"There is a dearth of evidence supporting the jury's finding of a December 1992 partnership. The only possible evidence upon which a jury could have based its finding of a partnership is the pre-December 1992 partnership representations which Phillips testified to in connection with his fraud claim. That evidence cannot be considered with respect to Phillips' partnership claim.
"The [employment agreement] between Wood and Phillips contains a merger agreement, and Phillips' own testimony demonstrates conclusively that the statements and evidence concerning Phillips' claim of an oral partnership were part of the same subject matter of the parties' [employment agreement]. Consequently, the parol evidence rule and the merger clause in the [employment agreement] preclude that evidence from being considered to vary or contradict the [employment agreement].
"The testimony by Phillips establishes that Phillips' claimed partnership directly contradicts the [employment agreement] and Phillips admits the same. Consequently the testimony and evidence relating to an alleged oral partnership formed between the parties outside of the [employment agreement] violated the parol evidence rule and could not have been properly considered by the jury in reaching its finding of a December 1992 partnership. That being the case, there was no proper evidence supporting Phillips' claim of an oral partnership, and the trial court erred by not granting Wood's motion for a JML with respect to that claim."
(Wood's brief, pp. 13-15.)
In support of his argument, Wood cites Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala.1999), and Lake Martin/Alabama Power Licensee Assoc. v. *959 Alabama Power Co., 601 So.2d 942 (Ala. 1992). In Infiniti, this Court stated:
"Merger clauses such as the one appearing on the front of the second retail-buyer's-order form signed by Mr. Office, are enforceable under Alabama contract law. Although a merger clause does not bar the admission of parol evidence to prove fraud in the inducement of the contract, it is properly used to ensure that preliminary negotiations, whether oral or written, are either memorialized in the final contract or are not considered part of it."
727 So.2d at 46. In Lake Martin/Alabama Power Licensee Association, this Court stated:
"When fraud in the inducement has been ruled out, as it has in this case ([Lake Martin/Alabama Power Licensee Ass'n v. Alabama Power Co.,] 547 So.2d [404] at 407-08 [(Ala.1989)]), it is clear that under Alabama law all prior statements and negotiations are merged into the written contract and that, the written agreement being the best evidence, in the absence of an ambiguity... parol evidence will not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract."
601 So.2d at 945. Wood's argument is succinctly stated in his brief, as follows: "It is clear that evidence which may be admissible to attempt to prove fraud in the inducement of a contract is not to be considered in interpreting a written contract." (Wood's brief, p. 25.)(Emphasis added.) We agree. Based on the law as set out in Infiniti of Mobile, Inc. and Lake Martin/Alabama Power Licensee Association, we do not believe that any evidence was presented that would support the jury's determination that a partnership between Wood and Phillips was formed in December 1992. The employment agreement was executed on December 30, 1992, and although the record does contain evidence indicating that a partnership was created after December 1992,[2] there is no evidence *960 in the record indicating that the parties entered into an oral partnership agreement between the date the alleged agreement was negotiated on December 30, 1992, and December 31, 1992.
Based on the foregoing, we hold that the trial judge erred in entering a judgment in favor of Phillips based upon the jury's determination that a partnership was created in December 1992. The judgment of the trial court refusing to grant Wood's alternative motion for a new trial is, therefore, reversed and the cause remanded.
Having determined that the trial court's judgment is due to be reversed and the cause remanded, we find it unnecessary to discuss Wood's other issues. See National American Ins. Co. v. Boh Bros. Constr. Co., 700 So.2d 1363 (Ala.1997).
REVERSED AND REMANDED.
HOUSTON, SEE, LYONS, BROWN, JOHNSTONE, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., dissents.
MOORE, Chief Justice (dissenting).
I respectfully dissent from the Court's decision to reverse the judgment based on the jury verdict and remand this case. The rationale behind the majority's ruling is that all of the evidence relating to the existence of a partnership through December 1992 was oral evidence admitted only as to the misrepresentation claim against Barry Wood. Once the jury found for Wood on the misrepresentation claim, the majority reasons, the parol evidence rule prohibited that oral evidence from being considered on the partnership claim. Because the only evidence demonstrating that a partnership existed before 1993 was oral evidence, the Court concludes that the jury could not have reasonably found that a partnership was formed in December 1992.
The Court is correct that the oral evidence indicating that a partnership existed before December 1992 could not be used to interpret that written employment agreement. However, it was not offered to interpret that agreement, but to prove count three of Phillips's complaint, a breach-of-contract claim entirely separate from the breach-of-contract claim relating to the employment agreement. Count three of Phillips's complaint alleged that the parties had entered into an oral agreement to form a partnership to acquire and operate the two radio stations and that Wood breached that oral agreement. There is no reason the oral evidence of the existence of the partnership could not be used to prove that separate count of breach of an oral contract.
*961 The record reflects that on the first day testimony was taken, during a bench conference outside the presence of the jury, Phillips stated in response to Wood's continuing parol evidence objection that "[w]e agree [that the employment contract does not create a partnership]. We say that the oral agreement creates a partnership." Phillips later dismissed count one of his complaint, which alleged breach of the 1992 employment agreement for failure to award him certain incentives pursuant to that contract. Phillips retained count two of his complaint, alleging that Wood had misrepresented to him that they would be partners in the ownership of the radio stations, along with count three, alleging that Wood had breached an oral agreement to create a partnership. Accordingly, the trial court instructed the jury as follows:
"Mr. Phillips would not be entitled to a favorable verdict under both theories [misrepresentation and that a partnership was created] if, indeed, either one. That will be your decision. But he cannot be entitled to a favorable verdict both for the creation of a partnership and the claim of misrepresentation."
Thus, the jury's finding that there was no misrepresentation but that a partnership did exist is logical.
Thus, because the oral evidence was not submitted to prove anything regarding the employment agreement, the finding on the misrepresentation claim did not preclude a finding that a partnership existed or preclude consideration of any oral evidence of the existence of such a partnership. Moreover, there need not have been a written agreement to prove that a partnership existed. As this Court has stated:
"There is no arbitrary test as to whether a partnership exists, but such a determination will be made upon all of the attendant circumstances. Adderhold v. Adderhold, [426 So.2d 457 (Ala. Civ.App.1983)]. A partnership arises only from an express or implied agreement among the parties and is never established by implication or by operation of law. Waters v. Union Bank of Repton, 370 So.2d 957 (Ala.1979); Adderhold v. Adderhold, supra; see also Ala.Code 1975, § 10-8-20. This Court, in Waters v. Union Bank of Repton, supra, held that `[t]he surrounding circumstances as well as any express agreement between the parties may evidence the intention of the parties necessary to establish such a [partnership] relationship. Hair v. Beall, 274 Ala. 699, 151 So.2d 613 (1963).' Id. at 960, 151 So.2d 613. The right to manage and control a business is one circumstance to be considered in determining the existence of a partnership relationship. § 10-8-20; Adderhold v. Adderhold, supra."
McCrary v. Butler, 540 So.2d 736, 739 (Ala.1989).
It is beyond dispute that the jury had before it ample evidence from which to conclude that a partnership existed. As note 2 of the Court's main opinion details, Wood filed federal tax documents in 1997 for the calendar year 1996 in which, under penalty of perjury, Wood stated that Baldwin Broadcasting Company was a partnership consisting of two partners. Again in 1998, Wood signed and filed an unemployment-tax report with the Commonwealth of Virginia in which he stated that Baldwin Broadcasting was a partnership, of which Barry Wood and William Phillips were the partners. In a letter dated August 28, 1996, Wood wrote to Phillips, "I hope the collections are flowing in a serious way this week. As you know, I am tapped out right now, ... I am not really sure how I'm going to meet the coming mortgage payment. It's your turn to cover any shortfall *962 on this payroll. Good luck." Phillips introduced into evidence nine checks from his personal checking account dated from February 1998 to May 1999, showing that Phillips provided both radio stations $113,000 with which to pay payroll and other expenses. This evidence demonstrates that Phillips took on partnership responsibilities during his tenure at Baldwin Broadcasting.
Since plenty of evidence indicating the existence of the partnership was provided to the jury, the only potential problem with the jury's finding that a partnership existed was its answer to the special interrogatory asking when the partnership began. Phillips testified that he and Wood agreed to be partners in 1988 when Wood applied to the Federal Communications Commission ("FCC") for the rights to the frequencies of the radio stations. The jury found that the partnership began in December 1992, the same month Phillips signed the employment agreement that stated that that document did not create a partnership between Wood and Phillips. However, the employment agreement simply stated that it did not create a partnership, not that a partnership did not exist or could not be created. Moreover, the fact that the employment agreement stated that it contained "the entire agreement and understanding of the parties .... [and] does not create a partnership between the parties" does not mean the jury was required to believe that no partnership had been forged apart from the employment agreement, particularly if there was evidence to the contrary.
Indeed, this Court in Wood v. Phillips, 823 So.2d 648 (Ala.2001)("Wood I"), pointed to several indicia of the existence of a partnership that occurred immediately following December 1992:
"Although the evidence regarding the existence of a partnership was conflicting, the fact that Phillips assumed a managerial role at the stations appears to be undisputed. In the initial phase of the radio station, Phillips was responsible for locating a studio site, hiring the contractor to construct the studio and the office, leasing tower space for the transmission antenna, and installing the transmitter for the station. Once the radio-station building had been constructed, Phillips remained in a managerial role by hiring disc jockeys and sales staff, making all staff decisions, selecting a music format for the station, and conducting the initial marketing."
823 So.2d at 653. As the Court pointed out in McCrary and repeated in Wood I, "[t]he right to manage and control a business is one circumstance to be considered in determining the existence of a partnership relationship." McCrary, 540 So.2d at 739; see also Vance v. Huff, 568 So.2d 745, 748 (Ala.1990). Those acts by Phillips clearly showed a high degree of control and management of the radio stations.
As I stated above, Phillips did not dispute that the employment agreement did not create a partnership; rather, he argued that the partnership agreement was an oral agreement, and that his and Wood's actions displayed the indicia of the partnership. The radio station went from "application" stage to full-time operation between January 1, 1993, and May 15, 1993, and it was during that period that Phillips performed most of the actions listed above, including selecting the site for the studio, setting up the studio, selecting the music format for the radio stations, creating the stations' logos and slogans, and hiring the employees without Wood's input. In performing those tasks, Phillips incurred expenses well in excess of $500, without Wood's consent, despite the fact that the 1992 employment agreement specifically stated that no employee would be *963 hired and no expense over $500 would be incurred without Wood's express authorization.
The jury may have inferred that those acts, beginning in January 1993, in which Phillips began to manage and control the radio stations demonstrated that apart from the employment agreement, a partnership between Wood and Phillips began in December 1992, one that Wood and Phillips studiously avoided reducing to writing because Phillips already owned a radio station in Alabama, a fact that probably would have caused the FCC to withdraw the license it had granted Baldwin Broadcasting. Such a logical inference does not contradict the evidence, as the majority holds. The jury certainly was not confined to finding that the partnership began either in 1988 when Phillips claimed it did or in 1996 when written evidence of it first surfaced, but could not possibly have begun in December 1992 because the employment agreement states that it does not create a partnership. Yet, that seems to be the decision of this Court.
"[I]t is an established rule that a jury verdict cannot be set aside merely because the jury could have drawn different conclusions from conflicting evidence. As this Court stated in Harris v. Meadows, 477 So.2d 374 (Ala.1985):
"`A jury verdict is presumed correct and will not be set aside unless it is without supporting evidence or is so contrary to the evidence as to render it wrong and unjust. Where the jury verdict is not plainly erroneous, we cannot consider other possible conclusions that might have been reached.'"
Muggins v. Neeley, 541 So.2d 506, 507 (Ala.1989).
So long as there is evidence to support the verdict and that evidence is properly before the jury, it is our duty to affirm the judgment the trial court entered on that verdict. I believe that was the case with this verdict because the oral evidence it considered in reaching its decision was not admitted for the purpose of interpreting the employment agreement. Moreover, other evidence that was not oral, namely Phillips's integral role in starting and managing the radio stations, was also admitted and supports the jury's finding. For all of these reasons, I believe that the judgment based on the jury verdict is due to be affirmed. I therefore dissent.
NOTES
[1] We note that Wood, on that appeal, presented four arguments: "(1) that any ownership interest Phillips asserts as a result of the partnership with Wood was not enforceable because the partnership, if one existed, would have been illegal, (2) that the trial court failed to articulate a legal or factual basis for its appointment of a receiver, (3) that in appointing a receiver the trial court failed to consider the effect of intervening evidencethe filing of the bankruptcy petitionwhich would serve to protect the stations from financial collapse, and (4) that the trial court failed to require an adequate amount as a bond for the receiver and for Phillips." 823 So.2d at 652.
[2] For example, the record shows that, on October 15, 1997, Wood signed and filed a federal tax Form 1065, partnership income tax return for the year 1996. Under penalty of perjury, Wood stated on the return that the name of the partnership was Baldwin Broadcasting Company, and on that return, under item E, "Date Business Started," Wood had entered "1 APR. 1996." Also on October 15, 1997, Wood signed and filed a Form SS-4, Application for Employer Identification Number for Baldwin Broadcasting Company, and in item 8a of that form, "Type of entity," Wood had checked the box indicating that the entity applying for the employee identification number was a partnership, and in item 10 of that form, "Date business started or acquired," Wood had entered "APRIL 1, 1996," and in the space for "First date wages or annuities were paid or will be paid," Wood had entered "APRIL 1, 1997." On March 9, 1998, Wood signed and filed an unemployment tax report with the Commonwealth of Virginia, and stated that Baldwin Broadcasting Company was a partnership, and that "Barry D. Wood" and "William H. Phillips" were the partners. Above the signature line were the words, "I certify that the information contained in this report is true and correct to the best of my knowledge." In addition to the documentary evidence listed above, there was other evidence indicating that a partnership was created.

It should be noted that this Court, in McCrary v. Butler, 540 So.2d 736 (Ala.1989), stated the following:
"There is no arbitrary test as to whether a partnership exists, but such a determination will be made upon all of the attendant circumstances. Adderhold v. Adderhold, [426 So.2d 457 (Ala.Civ.App. 1983)]. A partnership arises only from an express or implied agreement among the parties and is never established by implication or by operation of law. Waters v. Union Bank of Repton, 370 So.2d 957 (Ala.1979); Adderhold v. Adderhold, supra; see also Ala.Code 1975, § 10-8-20. This Court, in Waters v. Union Bank of Repton, supra, held that `[t]he surrounding circumstances as well as any express agreement between the parties may evidence the intention of the parties necessary to establish such a [partnership] relationship. Hair v. Beall, 274 Ala. 699, 151 So.2d 613 (1963).' Id. at 960. The right to manage and control a business is one circumstance to be considered in determining the existence of a partnership relationship. § 10-8-20; Adderhold v. Adderhold, supra."
540 So.2d at 739. In Adderhold v. Adderhold, 426 So.2d 457 (Ala.Civ.App.1983), cited in McCrary v. Butler, the Court of Civil Appeals held:
"It is especially difficult to determine if a partnership relationship exists where, as here, there is no written agreement.
"`The courts, both at common law and under the Uniform [Partnership] Act, have recognized that no one fact or circumstance can be taken as a conclusive test, nor is it possible to state any number of facts that would in all cases be decisive of the existence of a partnership relation. In the last analysis there is no arbitrary test for determining the existence of a partnership, and each case must be decided according to its own peculiar facts.'
"59 Am.Jur., Partnerships § 39 (1971)." 426 So.2d at 459-60.