Yvette R. Dickerson, the mother, filed a motion in the Montgomery Circuit Court, requesting the reinstatement of the postminority-educational-support obligation of Harry L. Dickerson, the father, after that obligation had been terminated by an earlier judgment. The trial court dismissed the mother's motion for lack of jurisdiction and assessed attorney fees against her under the Alabama Litigation Accountability Act, Ala. Code 1975, § 12-19-270 et seq. (the "ALAA"). The mother appeals. *Page 161 
The parties married in 1979. They had two children, a daughter and a son. In October 1996, a divorce judgment was entered by the Montgomery Circuit Court divorcing the parties and awarding the mother primary physical custody of the children. The trial court reserved the determination of postminority educational support for the children.
In 2001, when the parties' son prepared to enter college, the mother filed a petition requesting that the trial court require the father to pay a portion of the son's college education costs. After holding a hearing on the mother's petition, the trial court entered a judgment in October 2001 establishing each parent's postminority-educational-support obligation at approximately $1,481.50 per semester beginning in January 2002. The October 2001 judgment required the son to maintain a "C" average and to take a full course load, and it limited the parents' support obligation to a period of four years. Paragraphs 4 and 6 of the October 2001 judgment also required the son to provide both parents with a copy of his class schedule and grades for each semester and to notify them of any grants and scholarships that he might receive. Paragraph 7 of the October 2001 judgment stated that "[i]n the event the son fails to comply with any of the terms specified above, then the legal obligations of the [mother] and [father] shall cease."
In April 2002, the mother filed a petition to show cause alleging, in part, that the father had failed to pay postminority educational support in the amount of $1,481.50. The mother requested that the father be required to show cause why he should not be held in contempt of the trial court's October 2001 judgment. The father was served with a copy of the mother's petition. However, he failed to appear at the hearing on the petition; the mother appeared at the hearing, pro se. No transcript was made of the proceeding. After the hearing, the trial court entered an order on May 13, 2002, assessing court costs of $149 against the father "in addition to the $1,481.50 as prior ordered." The trial court ordered that the father be incarcerated "until he ha [d] paid the court costs of $149.00 plus the $1,481.50 as prior ordered, for a total of $1,630.50."
After the hearing on the mother's petition to show cause, a writ of arrest was apparently issued against the father and he was arrested and incarcerated in the Montgomery County Detention Facility. On May 17, 2002, the trial court entered an order releasing the father from the custody of the detention facility. The order also stated that the father "shall appear before the undersigned Judge on Friday, May 24, 2002 . . . and bring with him the amount of . . . One Thousand Six Hundred Thirty Dollars and Fifty Cents . . . to bring him in compliance with this Court's prior orders." A copy of the order was mailed to the mother.
On May 24, 2002, the trial court entered the following order:
 "THIS MATTER comes before the Court upon the Petition for Contempt filed by the [mother].
 "On the date and time of hearing there appeared in Court the [father]. The [mother] failed to appear.
 "Upon consideration of same, it is hereby ORDERED as follows:
 "1. That the college obligation of the [father] to the son is hereby terminated for the failure of the son to comply with the Court's Order.
 "2. That the Petition for Contempt filed by the [mother] is hereby dismissed for the [mother's] failure to appear. *Page 162 
 "3. That a copy of this Order shall be transmitted to counsel for and/or the parties."
No transcript was made of the May 24, 2002, hearing. A copy of the May 24, 2002, order was mailed to each of the parties.
On June 5, 2002, the mother filed a second petition to show cause requesting that the father be ordered to show cause why he should not be held in contempt of court for allegedly failing to pay $1,481.50 in past-due postminority educational support and for failing to pay the $149 in court costs from the trial court's May 13, 2002 order. The second petition to show cause was assigned a different case number, DR-96-735.06, than the number assigned to the mother's first petition to show cause, DR-96-735.05; all pleadings, motions, and orders filed after the mother filed her second petition to show cause were filed in case number DR-96-735.06. The father did not file a responsive pleading to the mother's second petition to show cause.
On August 16, 2002, the trial court held a hearing on the mother's second petition to show cause, at which both the father and the mother appeared pro se. No transcript was made of the proceedings. On August 19, 2002, the trial court entered a judgment stating, in part:
 "After hearing testimony and upon consideration of same, the Court ORDERS as follows:
 "1. That the [father] shall pay to the [mother] by 4:00 p.m. today, August 16, 2002, the sum of $1,481.50 for the college tuition, plus $149.00 court costs."
A copy of the August 19, 2002, judgment was mailed to each of the parties.
After the entry of the August 19, 2002, judgment, the father apparently paid the mother $1,630.50. However, a few days after the father made the payment to the mother, he retained legal counsel and, on August 23, 2002, filed a postjudgment motion seeking relief from the August 19 judgment. The father contended that the trial court's May 24, 2002, order had terminated his postminority-educational-support obligation and that it had dismissed the mother's first petition to show cause. The father also contended that the mother's second petition to show cause "did not allege a new arrearage, as post-minority support was terminated and there was no request to reinstate or jurisdiction over the now adult `child.'" The father further asserted that his legal obligation for postminority educational support had ceased upon the son's alleged failure to provide him with the information required by the October 2001 order. The father requested that the trial court order the repayment of the "$1,630.50 paid to purge contempt on this frivolous and non-meritorious claim under the Alabama Litigation Accountability Act" and that it require the mother to pay him "reasonable attorney fees, as a result of having to respond to what was and is a frivolous claim."
The trial court held a hearing on the father's postjudgment motion, at which the father and his counsel appeared; the mother appeared pro se. No transcript was made of the proceedings. On September 9, 2002, the trial court entered an order stating, in part:
 "After hearing argument and having viewed the case law submitted the Court does find that the prior Court Order should be amended, especially in light of the fact that previous Orders of this Court had dismissed the obligations of either party as it related to the college education of the child.
 "Upon consideration of same, the Court ORDERS as follows: *Page 163 
 "1. That the legal obligation of each parent to support the child in college is hereby terminated. In hereby doing so, the Court respectfully requests of the parties that they contribute to aiding this child toward the child's college education.
 "2. All other Orders as it relates to the obligations of the [father] to the [mother] are hereby terminated."
The September 2002 order did not require the mother to pay the father $1,630.50 and it did not award the father attorney fees.
After the entry of the September 2002 order, the mother retained counsel. Thereafter, she filed a motion to alter, amend, or vacate the judgment or, in the alternative, to "correct an oversight in [the trial court's] order, pursuant to Rule 60(a), Ala. R. Civ. P." The mother alleged, in part, that:
 "1. [The September 2002 order] refers to previous orders that had dismissed the obligations of either party as it related to the college education of the child, when in actuality the court's only order of dismissal was the order, dated May 24, 2002, which dismissed a Petition to Show Cause filed by [the mother], for what should have been the sole reason that the [mother] failed to appear, and no facts should have been found for lack of a prosecuting petitioner.
 "2. . . . The [mother's] failure to appear should only have affected her efforts to have the [father] held in contempt for failing to pay the court-ordered monies of $1,481.50.
 "3. By her notarized signature below, the [mother] hereby swears to the fact that the son was in full compliance with the [October 2001 judgment]. . . ."
The mother requested that the trial court
 "upon hearing evidence from both sides, . . . reinstate the obligation that each Party pay for one half of the son's college education, with a system of accountability that will ensure proof that grades and courses have been sent, as well as proof that grades and courses have been received, so that no Party can claim otherwise."
On October 14, 2002, without holding a hearing, the trial court entered an order granting the mother's postjudgment motion and stating that "the obligation of both parties to pay toward the son's education is hereby reinstated."
After the entry of the October 14, 2002, order, the father filed a motion making many of the same allegations, verbatim, that he had made in the August 23 motion he filed seeking relief from the trial court's August 19 judgment. The father's October motion added, among other things, the following:
 "6. That the [father] would aver that [the mother] in her Motion to Alter, Amend, or Vacate did not allege sufficient grounds to alter, amend, or vacate the Court's order.
 "7. That the [father] would aver that the Court did not terminate postminority support in its [September 2002 order], but only clarified its earlier dismissal order, dated May 24, 2002.
 "8. That the [father] would remind the Court that its order of May 24, 2002, was clear and unambiguous [`That the college obligation of the [father] to the son is hereby terminated for failure of the son to comply with the Court's orders.']
 "9. That the effect of said order was to divest this honorable Court of jurisdiction in this matter. Although this honorable Court held hearings on contempt, it did not reinstate the order and the only amendment by the Court was of the subsequent orders, pursuant to the [father's first postjudgment motion]." *Page 164 
The father also alleged that, at the hearing that resulted in the September 2002 order, the mother had "stated the son had not presented the [father] the bills for college. She cannot come back now and say the opposite. This would be perjury." The father again requested that the trial court order the mother to repay the $1,630.50 that he had paid to the mother and he requested "reasonable attorney fees, in the amount of $1,500.00 [to this point in the litigation]."
The trial court entered an order setting the father's October motion for a hearing on November 4, 2002. The order reflects that a copy of the order was forwarded to counsel for both parties.
The mother filed a response to the father's October motion, attaching an affidavit from the son in which the son stated that he had complied with the trial court's October 2001 judgment and that he had supplied the father with notice of his college schedule, grades, and other information. In her response, the mother also requested that the trial court order the father to pay an additional $1,481.50 for the son's college expenses for the fall 2002 semester.
On November 5, 2002, the trial court entered an order in which it specifically determined that the mother and her counsel had failed to appear at the November 4, 2002, hearing after they had been "properly noticed with the date, time, and place of hearing." No transcript was made of the hearing. The November 2002 order further stated, in part:
 "4. That this Court did not terminate postminority support in its [September 2002 order], but only clarified its earlier dismissal order, dated May 24, 2002.
". . . .
 "7. That the [mother's] Motion to Alter, Amend or Vacate was filed on October 9, 2002. This is beyond the time allowed to challenge the May 24, 2002 order.
 "Upon consideration of the same, the Court ORDERS as follows:
 "1. That the legal obligation of each parent to support the child in college was terminated in this Court's Order of May 24, 2002.
 "2. All other Orders as it relates to obligations of the [father] to the [mother] are hereby terminated.
 "3. That the [mother] is taxed with the costs of this action and with the attorney fees of the [father] in the amount of $2,500, under the provisions of the Alabama Litigation Accountability Act."
(Emphasis added.)
The mother filed a second postjudgment motion requesting that the trial court hold a hearing on her motion, that it vacate its November 2002 order, and that it order the father to pay her $1,481.50 for the son's fall semester college expenses. The trial court set the mother's second postjudgment motion "for oral argument, lawyers only" on December 16, 2002. No transcript was made of the December 16, 2002, hearing. Thereafter, the trial court held a hearing and entered an order denying the mother's second postjudgment motion. No transcript was made of the hearing on the mother's second postjudgment motion. The mother appeals.
The mother raises the following two issues on appeal:
 "[1.] The trial court committed reversible error by entering a judgment against [her] in its [November 2002 order] which incorrectly reversed its [October 2002 order], which correctly reversed the [September 2002 order], which incorrectly reversed the [August 2002 order], which followed an ore tenus *Page 165 
hearing with both parties, appearing pro se.
 "[2.] The trial court committed reversible error by entering a judgment against [her] in its [November 2002 order], assessing attorney fees and court costs against her merely for filing a Motion to Alter, Amend, or Vacate, the [September 2002 order] that reversed the favorable [August 2002] order."
The mother has also requested that this court award her attorney fees because, she says, "there is sufficient evidence in the record for this court to enumerate the grounds and evidentiary support for granting her attorney fees, pursuant to the [ALAA]." The father requests that this court hold the mother "liable for double damages" under Rule 38, Ala. R.App. P.
As evidenced by the various pleadings, motions, and trial-court orders in this case, there has been substantial disagreement and a fair amount of confusion as to the import of those orders. The disposition of this appeal depends on a proper assessment of the procedural history of this case and the posture of this case as presented to us on appeal.
In April 2002, the mother filed a petition that initiated a new action, albeit one that sought to require the father to show cause why he had not complied with a previous judgment (the trial court's October 2001 judgment). This action was docketed as DR-96-735.05. The trial court's May 13, 2002, order granting this petition constituted a final judgment. However, on May 24, 2002, within 30 days of the entry of its May 13 judgment, the trial court vacated that judgment and entered a new judgment (1) terminating the father's postminority-educational-support obligation and (2) dismissing, with prejudice, the mother's first petition to show cause.[1] No postjudgment motion or notice of appeal was filed as to this May 24, 2002, judgment.
The mother's second petition to show cause, filed on June 5, 2002, also initiated a separate action, although, like the April petition, it too sought to require the father to show cause why he should not be held in contempt for his failure to pay an allegedly past-due postminority-educational-support obligation. The mother's June 5 petition also requested that the father show cause as to why he should not be held in contempt for his failure to pay court costs as allegedly required by the trial court's May 13, 2002 order. The mother's June 5, 2002, petition ignored theeffect of the trial court's May 24, 2002, final judgment and didnot request that the trial court alter, amend, or vacate thatjudgment.[2]
The trial court held a hearing on the mother's second petition to show cause, at which it received ore tenus evidence. Thereafter, it entered its August 19, 2002, judgment requiring the father to pay the mother $1,481.50 for past-due postminority educational support and $149 for court costs, i.e., the same amounts that had been awarded to the mother in the previously vacated May 13, 2002, judgment. Contrary to the mother'sargument in her appellate brief, the trial court did not purportto reinstate the father's postminorityeducational-support *Page 166 obligation in its August 2002 order.
The father paid the mother $1,630 as required by the August 19, 2002, judgment. After the father made this payment, he retained legal counsel and, thereafter, filed a motion on August 23, 2002, alleging, for the first time so far as the record reflects, that he had a meritorious defense to the mother's second petition to show cause. The father requested that the mother be required to repay him the $1,630 that he asserted he had paid in order to purge himself of contempt on what he contended had been a "frivolous and non-meritorious claim under the Alabama Litigation Accountability Act." He also asked that the mother be required to pay him "reasonable attorney fees, as a result of having to respond to what was and is a frivolous action."[3]
After holding a hearing on the father's first postjudgment motion, the trial court entered an order on September 9, 2002, amending its August 19, 2002, judgment by purportedly terminating "the legal obligation of each parent to support the child in college" and terminating "[a]ll other Orders as it relates to obligations of the [father] to the [mother]."
In the wake of the trial court's entry of its September 9, 2002, order, on October 9, 2002, the mother filed a postjudgment motion. Among other things, she requested that the trial court enter an order "reinstating the obligation that each party pay for one-half of the son's college education." This October 9, 2002, motion is the first time the mother attempted to have the trial court vacate the May 24, 2002, judgment that had terminated the father's postminority-educational-support obligation.
Because a timely postjudgment motion was not filed as to the May 24, 2002, judgment, the trial court had no jurisdiction to alter, amend, or vacate that judgment by "reinstating" the father's postminority-educational-support obligation when it purported to do so in its October 14, 2002, order. See SuperiorSecurity Serv., Inc. v. Azalea City Federal Credit Union,651 So.2d 28, 29 (Ala.Civ.App. 1994) (holding, in the context of a "motion to reinstate" a judgment, that "[i]t is well settled that after 30 days elapse following the entry of a judgment, the trial court no longer has authority to correct or amend its judgment, except for clerical errors").[4]
As noted, the father then filed a motion seeking relief from the trial court's October 14, 2002, order and, on November 4, 2002, the trial court held a hearing on that motion. The mother and her counsel failed to appear at that hearing. After that hearing, the trial court entered its November 2002 judgment in which it correctly recognized that the father's postminority-educational-support obligation had been terminated by its May 24, 2002, judgment and that the mother had not filed a timely postjudgment motion seeking relief from that judgment. The trial court further taxed the mother with "costs of this action and with attorney fees of the [father] in the amount of $2,500.00, under the provision of the Alabama Litigation Accountability Act." *Page 167 
The mother argues that the trial court's November 5, 2002, order should be reversed. We will not specifically address all of the eight arguments that the mother makes in her brief on appeal to this court, all of which are related. The key to the mother's numerous arguments is her contention that the August 19, 2002, judgment in DR-96-735.06, vacated or reversed the trial court's May 24, 2002, judgment in DR-96-735.05 and reinstated the father's postminority-educational-support obligation. However, the August 19, 2002, judgment only required the father to pay the mother a past-due postminority-educational-support obligation of $1,481.50 and court costs of $149. This was the only relief the mother requested in the petition to show cause that she filed on June 5.[5] The fact remains, however, that the trial court's August 2002 judgment made no mention of the trial court's May 24, 2002, judgment terminating the father's postminority-educational-support obligation and did not purport to modify that judgment. Consistent with this observation, the trial court itself recognized in its November 5, 2002, order that its May 24, 2002, judgment terminated the father's postminority-educational-support obligation and that that judgment was not the subject of a timely postjudgment motion. Accordingly, the trial court's conclusion in its November 2002 judgment that it had no jurisdiction to vacate or reverse the May 24, 2002, judgment and to "reinstate" the father's postminority-educational-support obligation is due to be affirmed.
The mother next argues that the trial court erred by assessing attorney fees against her under the ALAA because, she says, "it fail[ed] to find that [her] actions were brought without substantial justification, and it failed to enumerate the grounds and evidentiary support for such a finding." Section 12-19-273(a) of the ALAA states:
 "in any civil action commenced or appealed in any court of record in this state, the court shall award, as part of its judgment and in addition to any other costs otherwise assessed, reasonable attorneys' fees and costs against any attorney or party, or both, who has brought a civil action, or asserted a claim therein, or interposed a defense, that a court determines to be without substantial justification, either in whole or part."
The ALAA further provides:
 "The phrase `without substantial justification', when used with reference to any action, claim, defense or appeal, including without limitation any motion, means that such action, claim, defense or appeal (including any motion) is frivolous, groundless in fact or in law, or vexatious, or interposed for any improper purpose, including without limitation, to cause unnecessary delay or needless increase in the cost of litigation, as determined by the court."
Ala. Code 1975, § 12-19-271(1); see also Ala. Code 1975, §12-19-273 ("[w]hen granting an award of costs and attorneys' fees, the court shall specifically set forth the reasons for such award and shall consider" a detailed list of enumerated factors, among others). *Page 168 
In Pacific Enterprises Oil Co. v. Howell Petroleum Corp.,614 So.2d 409 (Ala. 1993), our Supreme Court stated:
 "[W]e will require a trial court making the `without substantial justification' determination to make its determination, the ground or grounds upon which it relies, and the legal or evidentiary support for its determination, a part of the record, either by drafting a separate written order or by having these findings transcribed for the official record."
Id. at 418; see also Morrow v. Gibson, 827 So.2d 756, 761
(Ala. 2002) ("Pacific Enterprises cannot be cited for the proposition that the phrase "without substantial justification" is talismanic[;] . . . [but it] does stand for the proposition that the trial court must give a basis for its ruling.").
Although the trial court made some fact findings in its November 2002 postjudgment order, we cannot determine which of the grounds described in § 12-19-271(1) the trial court relied on in making its attorney-fee award. Rather than remanding this cause for the trial court to modify its judgment so as to state the grounds upon which it purported to rely in making its attorney-fee award, however, we find it more appropriate based on the record before us in the present case simply to reverse the judgment and instruct the trial court to enter a new judgment that does not make an attorney-fee award. We reach this conclusion based upon the confusion that obviously prevailed throughout the history of this case, the uncertainty among the parties, the changes of position by the trial court as to the import of its various orders, and the fact that the mother's successive petitions and motions consistently met with success until the trial court entered its November 5, 2002, judgment. In reference to her efforts during the course of this litigation to obtain a reinstatement of the trial court's August 19, 2002, judgment, the mother argues with some justification that "it is inconceivable that the court would consider her efforts to restore the court's [own] prior order as a frivolous action." Based on our careful review of the procedural history of this case, although we conclude that the mother's efforts to obtain reinstatement of postminority educational support ultimately must fail, we do not think it can be concluded that the mother asserted positions that were so frivolous, groundless, vexatious, or improper as to justify the award of attorney fees under the ALAA.
Accordingly, the trial court's judgment is affirmed except insofar as it awarded attorney fees under the ALAA; as to the award of attorney fees, we reverse the trial court's judgment, and remand the cause to the trial court for the entry of a judgment consistent with this opinion.
The mother's request for the award of an attorney fee on appeal is denied. In light of our disposition of this cause, the father's request for double damages under Rule 38, Ala. R.App. P., is also denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
[1] Since no transcript was made of the May 24, 2002, proceeding, it is not clear whether the father made an oral request that the May 13, 2002, judgment be vacated and that he be relieved of his postminority-educational-support obligation or whether the trial court acted on its own initiative. Seegenerally Ex parte Owen, 420 So.2d 80 (Ala. 1982) (describing a trial court's authority to amend a judgment on its own initiative).
[2] In addition, the mother has not argued that her June 5, 2002, petition constituted a motion under either Rule 59, Ala. R. Civ. P., or Rule 60, Ala. R. Civ. P., for relief from the May 24 judgment.
[3] The trial court never addressed the father's postjudgment request that the mother be ordered to repay the father the $1,630 that he had paid pursuant to the court's August 19, 2002, judgment. Thus, that portion of the relief requested by the father in his August 23 motion was denied as a matter of law pursuant to Rule 59.1, Ala. R. Civ. P.
[4] We also note that the son had become an adult before the mother requested the reinstatement of the father's postminority-educational-support obligation.
[5] The father chose to pay this sum before challenging his obligation to do so in his August 23 motion. Despite the trial court's ultimate conclusion in its November 5, 2002, order that the father's postminority-educational-support obligation was terminated by the May 24, 2002, judgment, the trial court never addressed the father's motion seeking the reimbursement of his payment. The father has chosen not to seek appellate review of the trial court's failure to address his motion and, therefore, this issue is not before us.