COBB, Chief Justice.
 

 William H. Phillips, the plaintiff in an action in the Mobile Circuit Court alleging civil conspiracy and tortious interference with a business relationship, appeals from summary judgments in favor of Ken Johnson, .Com + , L.L.C.,
 
 [1]
 
 Lew Dickey, Cumulus Licensing, L.L.C., Cumulus Broadcasting, L.L.C., and Cumulus Media, Inc. Because the Mobile Circuit Court lacked jurisdiction of the matter, we vacate the summary judgments, dismiss this appeal, and dismiss the action.
 

 This case has its genesis in a dispute between Barry Wood and Phillips over ownership interests in Baldwin Broadcasting Company (hereinafter “Baldwin”), which owned and operated FM radio broadcast stations WAVH in Daphne and WZEW in Fairhope. Phillips contended
 
 *223
 
 that Baldwin was a partnership between Wood and Phillips; Wood contended that Phillips was an employee of Baldwin. This Court has considered that case on two occasions. See
 
 Wood v. Phillips,
 
 823 So.2d 648 (Ala.2001)
 
 (“Wood
 
 I”), and
 
 Wood v. Phillips,
 
 849 So.2d 951 (Ala.2002)
 
 (“Wood II”).
 
 The facts surrounding the dispute are fully set forth in
 
 Wood I
 
 and
 
 Wood II.
 

 In 1999, Cumulus Broadcasting Company (now Cumulus Broadcasting, L.L.C.) offered to purchase WAVH and WZEW, the two radio stations owned by Baldwin. Subsequently Phillips sued Wood in a dispute over ownership interests in Baldwin. On November 3, 2000, Wood filed a petition in bankruptcy in the United States District Court for the Eastern District of Virginia. While Wood’s bankruptcy proceeding was pending, a jury in the state-court action returned a verdict in favor of Phillips, finding that he had a 40% partnership interest in Baldwin. Wood appealed to this Court.
 
 Wood II.
 
 While
 
 Wood II
 
 was pending on appeal before this Court, the bankruptcy court ordered an auction of Wood’s assets, including the radio stations. In conjunction with the sale of the radio stations, Woods and Phillips entered into a settlement agreement, pursuant to which Phillips would receive a percentage of the proceeds from the sale of the stations. The settlement agreement also stated that Wood and Phillips would ask the trial court to modify its order “to clarify that the partnership found by the jury was [Baldwin Broadcasting Company partnership] and that such entity did not own the licenses (the ‘McDermott Order’),”
 
 [2]
 
 which, the agreement stated, “always have been held by the sole proprietorship Baldwin Broadcasting Company.” The settlement agreement further provided that Wood would request dismissal of his appeal before this Court. On May 14, 2002, .Com+, L.L.C., entered into one, and Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C.,
 
 [3]
 
 entered into another, “Amended and Restated Asset Purchase Agreement” with Wood.. Com 4-, L.L.C., was proposing to purchase WZEW, and Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C., were proposing to purchase WAVH. Both asset-purchase agreements contained escalation clauses if the sale of the radio stations did not close by December 31, 2002. Both asset-purchase agreements also stated that the agreements could be terminated at any time by the mutual written consent of the seller and buyer, by written notice to the other party if the buyer or seller breached any material representations or warranties or defaults on its agreements, by written notice of either party if the FCC denied the FCC application, or by written notice of either party if the closing was not consummated by the expiration of the local-marketing agreements.
 

 On May 15, 2002, the United States Bankruptcy Court for the Eastern District of Virginia entered an order confirming Wood’s amended plan of reorganization, approving the asset-purchase agreements, which incorporated the settlement agreement, and approving the sale of the radio stations. The bankruptcy court’s order contained the following provisions:
 

 “6. The Plan is binding upon all parties in interest, regardless of whether the claims of interests of such parties
 
 *224
 
 are impaired or unimpaired, regardless of whether the holders of such claims or interests have accepted the Plan, and regardless of whether the holders of such claims or interests have filed proofs of claim or interest.
 

 [[Image here]]
 

 “9. The Court retains jurisdiction over this matter in accordance with the terms of the Plan and as otherwise provided by applicable law.
 

 [[Image here]]
 

 “34. This Court retains jurisdiction to enforce and implement the terms and provisions of the Plan, this Order, the Asset Purchase Agreements, and the Bid Procedures Order, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Assets to [Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C.,] and [.Com + , L.L.C.]; (b) resolve any disputes arising under, or related to, the Asset Purchase Agreements, this Order and the Bid Procedures Order; (c) interpret, implement, and enforce the provisions of this Order and the Bid Procedures Order; and (d) protect Cumulus and [.Com + , L.L.C.,] against any kind or nature of Encumbrance whatsoever (except those contemplated by the Plan and the Sale).”
 

 After entering into the settlement agreement, the parties failed to have the trial court enter the order referred to in that agreement as the McDermott Order.
 
 [4]
 
 Wood also failed to ask this Court to dismiss his appeal as he agreed to do in the settlement agreement, and on November 8, 2002, this Court reversed the trial court’s judgment holding that Phillips was a partner in Baldwin and remanded the cause to the trial court for a new trial.
 
 Wood II.
 

 By May 2004, the local-marketing agreements had expired, and the FCC had yet to approve the application to transfer the FCC licenses to facilitate the sale of the radio stations. On September 9, 2004, Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C., gave Wood notice of their termination of the WAVH asset-purchase agreement, and .Com + , L.L.C., gave Wood notice of its termination of the
 
 *225
 
 WZEW asset-purchase agreement on January 20, 2005. Wood subsequently moved the bankruptcy court to terminate the settlement agreement between him and Phillips, and the bankruptcy court scheduled a hearing on May 20, 2005. Before the hearing in the bankruptcy proceeding, Dickey, president of Cumulus Media, and Johnson, president of .Com + , L.L.C., were deposed. The attorney representing Phillips in the bankruptcy proceeding was present either in person or by telephone during both depositions. Phillips alleges that the deposition testimony of both individuals indicated an agreement between Cumulus Broadcasting, L.L.C., Cumulus Licensing, L.L.C., .Com + , L.L.C., and Wood to convince the bankruptcy court to set aside the sale of the radio stations in part so that Wood, following this Court’s decision in
 
 Wood II,
 
 would not have to pay Phillips a percentage of the proceeds of the sale of the radio stations.
 

 At the hearing before the bankruptcy court, Phillips failed to bring to the court’s attention Dickey’s and Johnson’s deposition testimony regarding an alleged quid pro quo between Wood and Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C., and Wood and .Com + , L.L.C., regarding the asset-purchase agreements and the sale of WAVH and WZEW. The bankruptcy court subsequently held that intervening circumstances prohibited the closing of the sale of the radio stations and, thus, that the settlement agreement between Woods and Phillips was to be set aside.
 

 On September 8, 2006, Phillips instituted the present action against Dickey, Cumulus Licensing, L.L.C., Cumulus Broadcasting, L.L.C., Cumulus Media, Inc., Wood, Johnson, and .Com + , L.L.C., alleging that Dickey, Johnson, the Cumulus entities, and .Com + , L.L.C., had conspired with Wood to terminate the asset-purchase agreements so that Wood would then be able to terminate the settlement agreement with Phillips and that they tortiously interfered with the contractual agreement between Phillips and Wood. On October 13, 2006, Wood removed the action to the United States District Court for the Southern District of Alabama, arguing that pursuant to 28 U.S.C. § 1452, the case must be removed to federal district court because it was related to a bankruptcy proceeding. Phillips amended his complaint, voluntarily dismissing Wood, and the case was remanded to the Mobile Circuit Court on November 13, 2006.
 

 Johnson and .Com +, L.L.C., moved for a summary judgment on January 31, 2007. Phillips responded, and on March 16, 2007, the trial court held a hearing on the summary-judgment motion filed by Johnson and .Com + , L.L.C. The trial court granted their summary-judgment motion on March 21, 2007. Dickey and the Cumulus entities then filed a motion for a summary judgment on April 9, 2007, and the trial court granted their summary-judgment motion on April 10, 2007. Phillips appeals.
 

 Before addressing the issues Phillips raises before this Court, we must consider whether the trial court had subject-matter jurisdiction. As this Court recently held:
 

 “This Court is not limited by the parties’ jurisdictional arguments; we are obligated to look beyond those arguments and to dismiss an appeal
 
 ex mero motu
 
 if, for any reason, jurisdiction does
 
 not
 
 exist.
 
 Reynolds v. Colonial Bank,
 
 874 So.2d 497, 503 (Ala.2003) (“‘[I]f there is an absence of jurisdiction over the subject-matter, this ends the inquiry; it cannot be waived or supplied by consent.” ’ (quoting
 
 Wilkinson v. Henry,
 
 221 Ala. 254, 256, 128 So. 362, 364 (1930) (emphasis added)));
 
 Ex parte Smith,
 
 438 So.2d 766, 768 (Ala.1983) (‘Lack of subject matter jurisdiction may not be
 
 *226
 
 waived by the parties and it is the duty of an appellate court to consider lack of subject matter jurisdiction
 
 ex mero motu.’
 
 (citing
 
 City of Huntsville v. Miller,
 
 271 Ala. 687, 688, 127 So.2d 606, 608 (1958)));
 
 Payne v. Department of Indus. Relations,
 
 423 So.2d 281 (Ala.Civ.App.1982); and
 
 Bibb v. Boyd,
 
 417 So.2d 206, 208 (Ala.Civ.App.1982) (‘[I]n any event, lack of jurisdiction over the subject matter is not waivable and may be raised
 
 ex mero motu
 
 by either a trial court or by an appellate court’ (citing 5 Wright and Miller,
 
 Federal Practice and Procedure,
 
 Civil § 1393)). A court is obligated to vigilantly protect against deciding cases over which it has no jurisdiction because ‘[i]t would amount to usurpation and oppression for a court to interfere in a matter over which it has no jurisdiction, and its pronouncements in respect thereto would be without force, and its decrees and judgments would be wholly void. This is a universal principle, as old as the law itself.’
 
 Wilkinson,
 
 221 Ala. at 256, 128 So. at 364.”
 

 Crutcher v. Williams,
 
 12 So.3d 631, 635 (Ala.2008).
 

 In its May 15, 2002, order confirming Wood’s amended plan of reorganization, approving the asset-purchase agreements, and approving the sale of substantially all assets of Wood’s bankruptcy estate, the bankruptcy court explicitly retained jurisdiction over matters relating to the asset-purchase agreements. Specifically, the bankruptcy court stated:
 

 “34. This Court retains jurisdiction to enforce and implement the terms and provisions of the Plan, this Order, the Asset Purchase Agreements, and the Bid Procedures Order, all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Assets to [Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C.,] and [.Com+, L.L.C.]; (b) resolve any disputes arising under, or related to, the Asset Purchase Agreements, this Order and the Bid Procedures Order; (c) interpret, implement, and enforce the provisions of this Order and the Bid Procedures Order; and (d) protect Cumulus and [.Com + , L.L.C.,] against any kind or nature of Encumbrance whatsoever (except those contemplated by the Plan and the Sale).”
 

 Phillips’s claim of a conspiracy among Dickey and the Cumulus entities, Johnson and .Com+, L.L.C., and Wood to have the bankruptcy court set aside the asset-purchase agreements and his claim that Dickey, the Cumulus entities, Johnson, and .Com + , L.L.C., tortiously interfered with his business relationship with Wood are clearly claims relating to “disputes arising under, or related to, the Asset Purchase Agreements .... ” As the United States District Court for the Northern District of Alabama has observed:
 

 “All courts, including bankruptcy courts, retain jurisdiction to enforce their own orders and judgments. The Bankruptcy Court retains jurisdiction to construe and enforce its own orders from prior core proceedings and should do so.”
 

 Consumer Portfolio Servs., Inc. v. Coleman,
 
 342 B.R. 817, 820 (N.D.Ala.2006).
 

 Phillips’s claims regarding Wood’s, Dickey’s, and Johnson’s actions should have been raised before the bankruptcy court at its hearing on May 20, 2005. Phillips knew before the hearing of both Dickey’s and Johnson’s deposition testimony to the effect that there was purportedly a quid pro quo agreement to have the asset-purchase agreements and settlement agreement set aside; yet he failed to inform the
 
 *227
 
 bankruptcy court of the alleged quid pro quo agreement. At the time Phillips filed his claims in the state court, they were subject to the jurisdiction of the bankruptcy court.
 

 The bankruptcy court explicitly retained jurisdiction over “disputes arising under, or related to, the Asset Purchase Agreements.” Phillips’s claims clearly are disputes related to the asset-purchase agreements. Because the bankruptcy court retained jurisdiction, the courts of this State lack jurisdiction. See
 
 Wollman v. Jocar Realty Co.,
 
 19 A.D.3d 210, 211, 799 N.Y.S.2d 17, 18 (2005) (“Where jurisdiction is expressly retained by the bankruptcy court, it should be construed as exclusive jurisdiction, even though not specifically denominated as such, so as not to render the provision a nullity.”);
 
 Bryan v. Speakman,
 
 53 F.2d 463, 465 (5th Cir.1931) (“By the great weight of authority, it has always been the law that the rule which operates to prevent unseemly conflicts between state and federal equity courts, that that which first acquires jurisdiction of a res retains possession of it ... has governed the relations between state courts and courts of bankruptcy.”);
 
 City of Opelika v. Daniel,
 
 59 Ala. 211, 214 (1877) (“To preserve harmonious the relations between the State tribunals and those of the United States, it was early seen that when matters that were within the jurisdiction of both, had been subjected to the control of one of them, there should not be any unnecessary interference therewith by the other.”). We therefore vacate the summary judgments in favor of Dickey, Cumulus Broadcasting, L.L.C., Cumulus Licensing, L.L.C., Cumulus Media, Inc., Johnson, and .Com 4-, L.L.C. Furthermore, because a void judgment will not support an appeal, this appeal is dismissed.
 

 Because we conclude that the trial court lacked subject-matter jurisdiction, we pre-termit discussion of the issues raised by Phillips in his appeal.
 

 JUDGMENT VACATED; APPEAL DISMISSED; AND CASE DISMISSED.
 

 WOODALL, SMITH, PARKER, and SHAW, JJ., concur.
 

 [1]
 

 . The name of this entity also appears in the record as "DotCom Plus, L.L.C.”
 

 [2]
 

 . The order sought is referred to as the McDermott order because it would have been entered by the late Judge William H. McDer-mott.
 

 [3]
 

 . The actual parties to the asset-purchase agreement were Cumulus Broadcasting, Inc., and Cumulus Licensing Corp., the predecessors to Cumulus Broadcasting, L.L.C., and Cumulus Licensing, L.L.C., respectively.
 

 [4]
 

 . Without deciding the issue, this Court notes that it is uncertain whether the trial court would have had jurisdiction to enter such an order. As this Court held in
 
 George v. Sims,
 
 888 So.2d 1224, 1226-27 (Ala.2004):
 

 " ‘A final judgment is an order "that conclusively determines the issues before the court and ascertains and declares the rights of the parties involved.” '
 
 Lunceford v. Monumental Life Ins. Co.,
 
 641 So.2d 244, 246 (Ala.1994) (quoting
 
 Bean v. Craig,
 
 557 So.2d 1249, 1253 (Ala.1990)). Generally, a trial court has no jurisdiction to modify or amend a final order more than 30 days after the judgment has been entered, except to correct clerical errors. See Rule 59(e) and Rule 60, Ala. R. Civ. P.;
 
 Cornelius v. Green,
 
 477 So.2d 1363, 1365 (Ala.1985) (holding that the trial court had no jurisdiction to modify its final order more than 30 days after its final judgment);
 
 Dickerson v. Dickerson,
 
 885 So.2d 160, 166 (Ala.Civ.App.2003) (holding that, absent a timely post-judgment motion, the trial court has no jurisdiction to alter, amend, or vacate a final judgment); and
 
 Superior Sec. Serv., Inc. v. Azalea City Fed. Credit Union,
 
 651 So.2d 28, 29 (Ala.Civ.App.1994) ('It is well settled that after 30 days elapse following the entry of a judgment, the trial court no longer has authority to correct or amend its judgment, except for clerical errors.’).
 

 "... Although a trial court has 'residual jurisdiction or authority to take certain actions necessaiy to enforce or interpret a final judgment,’ that authority is not so broad as to allow substantive modification of an otherwise effective and unambiguous final order.
 
 Helms v. Helms' Kennels, Inc.,
 
 646 So.2d 1343, 1347 (Ala.1994).”