47 So.3d 823 (2010)
Ex parte STATE DEPARTMENT OF HUMAN RESOURCES.
(In re The Matter of R.H.J. and In re The Matter of S.H.).
2081197.
Court of Civil Appeals of Alabama.
March 12, 2010.
Certiorari Denied May 7, 2010 Alabama Supreme Court 1090864.
*825 Sharon E. Ficquette, chief legal counsel, and Jennifer M. Bush, legal counsel, Department of Human Resources.
J. Clay Benson, Jr., of Esco & Benson, LLC, Montgomery, guardian ad litem.
Joshua B. James, Montgomery, for C.H.
MOORE, Judge.
The State Department of Human Resources ("DHR") petitions this court for a writ of mandamus directing Judge Patricia Warner of the Montgomery Juvenile Court ("the juvenile court") to vacate those portions of an August 17, 2009, judgment in which the juvenile court ordered DHR to pay certain funds, collected by DHR from R.L.H. ("the father") as a child-support arrearage and interest, to C.H., the legal custodian of R.H.J. and S.H. ("the children"). As grounds for the requested writ, DHR asserts that the juvenile court lacked subject-matter jurisdiction to collaterally attack a May 2005 final judgment entered in favor of DHR and lacked subject-matter jurisdiction to order the State treasury to issue funds to an individual. Because we grant the petition and issue the writ on the first ground, we need not address the second ground.

Background
In May 2005, DHR obtained a judgment against the father in case number CS-01-576 in the Montgomery Circuit Court, Child Support Division. On May 18, 2005, a juvenile-court referee evidently determined that DHR had proven its right to be reimbursed for benefits DHR had paid on behalf of the children, to whom the father owed a duty of support. The documents filed along with the petition for the writ of mandamus indicate that on May 19, 2005, Judge Anita Kelly, a Montgomery circuit-court judge, ratified and confirmed the referee's order, thereby requiring the father to pay DHR $11,347.71, along with accrued interest of $2,407.10. The clerk of the circuit court stamped the judgment "received" on that same date, indicating that it had been properly filed with the clerk's office.
In May 2008, the children became the subject of separate dependency actions in the juvenile court (case numbers JU-08-12.01 and JU-08-13.01). After determining that the children were dependent, the juvenile court awarded custody of the children to C.H., their aunt. At that time, DHR was still collecting on the May 2005 judgment against the father. As part of its collection efforts, on March 10, 2008, DHR had intercepted $6,178 payable to the father, allocating $4,760.77 to the judgment *826 and the remainder to a separate judgment relating to another child-support case involving the father. When the juvenile court awarded custody of the children to C.H., the juvenile court entered the following handwritten notation on the case-action-summary sheets in both juvenile files: "Tax stimulus monies for both children to be paid to [C.H.] by father. Review set for 9/23/08 @ 10 AM. (See [child-support] cases to determine where father's tax intercept is.) PDW."
On July 14, 2008, the State again intercepted $1,023 payable to the father, allocating $775 of that amount to the May 2005 judgment. On August 19, 2008, the juvenile court entered a handwritten notation on the case-action-summary sheets in both juvenile cases: "GAL to review [child-support] records to determine whether there is an order of support which can be redirected to custodian. Support issues to be reviewed on 9/23/08 @ 10 AM. PDW."
In November 2008, the juvenile court consolidated the pending juvenile cases with case number CS-01-576, and it set all pending issues for a hearing. After a hearing, the juvenile court entered a judgment on August 17, 2009. In that judgment, the juvenile court stated as follows:
"THIS MATTER came before the Court for final hearing in the above styled cases. On January 18, 2005, Referee Heibel wrote in the case action summary the following finding: `the Mother was deceased as of January 5, 2005 ... credit given to terminate CCS...' Two minor children remain alive and the father is alive and was still married to mother at time of her death. Apparently, the parties were separated and the father was paying $150 per month in child support at the time of the mother's death. After the Mother's death, the Father had custody of the children. No evidence of affirmation of Referee's recommendation by a circuit Judge is contained in the record.
"The child support record does not reflect evidence of any amounts for benefits paid by the Department of Human Resources (hereinafter, DHR) to the Mother prior to her death were presented and substantiated in the record [sic]. However, DHR has continued to collect $150 per month from the Father and intercepted tax refunds and stimulus checks and retained same. No monies have been paid to the custodian, [C.H.], for the children by DHR after custody was vested in her in May, 2008. The Montgomery County Department of Human Resources simply collected child support money from the Father and wrongfully retained same. Likewise, the Montgomery County DHR collected child support money from the Father after the custody of the children was vested in [C.H.] and kept all funds for its own purposes.
"The Father did not receive benefits from DHR. The deceased Mother received benefits in some unproven amount, making the deceased Mother in privity of contract with DHR for any obligation for repayment to DHR. The Father has no obligation to repay DHR for any amount of benefits which it may have extended to her. The Father's obligation does not change because of the Mother's death. The Father's only obligation is to pay child support pursuant to Rule 32, [Ala. R. Jud. Admin.] Likewise, custodian, [C.H.], has no obligation to pay DHR for benefits in some unspecified amount which DHR supposedly paid to the deceased mother.
"On January 3, 2008, the maternal aunt, [C.H.], filed for custody in the Juvenile Court Montgomery County. Thereafter, all matters, including child *827 support matters, were heard by a circuit judge. There was no activity in the child support case which was consolidated into the Montgomery County Juvenile Court case. There was some attempted activity after the Mother's death, but the referee's recommendation was never affirmed by a circuit judge nor was said affirmation entered into the record. On May 15, 2008, DHR filed a home evaluation and report with the Court which recommended that [C.H.] be awarded custody of her niece and nephew, [R.H.J, and S.H.].
"After a hearing on May 27, 2008, the Court vested custody in [C.H.]. In that same entry/Order in the case action summary, the Court specifically stated:
"`... Tax Stimulus monies for both children to be paid to Petitioner [C.H.] by the father. Review set for 9/23/08. (See [child-support] cases to determine where father's tax intercept is.) PDW'
"Monies were paid to [C.H.] as of the last hearing on April 8, 2009.
"On March 3, 2009, State's Exhibit 2 evidences that DHR has taken $9,902 from the Father and paid nothing for the children. State's Exhibit 2 shows that after [C.H.]'s petition for custody was filed, DHR intercepted $6,178.00 from Father on March 10, 2008, at which time the children were still in the Father's care.
"In violation of this Court's May 27, 2008, Order, that tax stimulus monies be paid to [C.H.] by the Father, DHR intercepted $1,023 in stimulus monies on July 14, 2008. DHR again on September 3, 2008 and November 13, 2008 violated this Court's Order by receiving child support monies and under child support Orders refusing to forward same for the support of the children.
"On September 10, 2008, DHR was Ordered to appear on April 8, 2009, and prove all amounts, if any, in benefits paid to the Mother which would justify DHR's continued taking of money from the living parent but refusing to pay out same for support of the children. No evidence was presented.
In reviewing the child support cases which were consolidated into the Juvenile cases, it is clear that person(s) have `whited' out the last entry entered by the undersigned judge leaving the last child support entry entered by the Referee on January 18, 2005 and no affirmation by a Circuit Judge.
"Based on the foregoing, it is ORDERED as follows:
"1. That the child support case CS-2001-576 is CLOSED.
"2. That Montgomery County DHR has wrongfully taken and kept $9,902 from the two minor children representing monies paid by the Father or intercepted by DHR from the Father. Said child support monies were to be used for the support and care of the children who were in the Father's custody until May 27, 2008, when custody of both children was awarded to [C.H.].
"3. That DHR shall immediately, but not later than thirty (30) days from the date of this Order, pay $9,902 to [C.H.], custodian of the children. The Father asserted that all monies due to be reimbursed to him should be paid to the custodian.
"4. That should DHR fail or refuse to pay the $9,902 within the time allotted, then said sum shall be reduced to a judgment in favor of [C.H.] and against the Montgomery County [DHR][[1]] from which execution may lie.

*828 "5. That child support is hereby set pursuant to Rule 32, [Ala. R. Jud. Admin.] (2008 Rules) in the amount of $398 per month. The Father shall pay directly to the Custodian, Mrs. [C.H.], in the form of cashier's check or money order by the 15th of each month, beginning September 1, 2009."

Finality of Judgment
Before proceeding to the merits of the petition, we must first resolve a dispute amongst the parties regarding the finality of the judgment.
"`"`A judgment that conclusively determines all of the issues before the court and ascertains and declares the rights of the parties involved is a final judgment.'" [Pratt Capital, Inc. v.] Boyett, 840 So.2d [138,] 144 [(Ala.2002)] (quoting Nichols v. Ingram Plumbing, 710 So.2d 454, 455 (Ala.Civ.App.1998)). "A judgment that declares the rights of the parties and settles the equities is final even though the trial court envisions further proceedings to effectuate the judgment." Wyers v. Keenon, 762 So.2d 353, 355 (Ala.1999). Otherwise stated, a judgment that is "definitive of the cause in the court below, leaving nothing further to be done, save [its enforcement]," is a final judgment. Ex parte Gilmer, 64 Ala. 234, 235 (1879).'"
Ex parte Progressive Specialty Ins. Co., 31 So.3d 661, 664 (Ala.2009) (quoting Faith Props., LLC v. First Commercial Bank, 988 So.2d 485, 490-91 (Ala.2008)).
In this case, the juvenile court entered its August 17, 2009, judgment after a final hearing. In that judgment, the juvenile court ascertained that the May 2005 judgment had never been ratified, confirmed, or entered and that DHR had failed to prove its right to intercept funds payable to the father or to collect certain monthly payments from the father. The August 2009 judgment determined that DHR owed the father $9,902, which the father stipulated should be paid to C.H. for the support of the children. The August 2009 judgment further ordered DHR to pay the $9,902 directly to C.H. within 30 days. Although the August 2009 judgment indicated that, if DHR failed to pay as directed, "the said sum would be reduced to a judgment ... from which let execution issue," the said sum had already been reduced to an enforceable judgment. It appears the juvenile court intended that DHR's failure to comply would result in further enforcement action. In any event, such language, implying only further enforcement action, does not render the August 2009 judgment nonfinal. Ex parte Progressive Specialty Ins. Co., supra.
Ordinarily, a petition for a writ of mandamus is not available to review a final judgment, but it is the proper vehicle for seeking review of an interlocutory order. Ex parte A.M.P., 997 So.2d 1008, 1014 (Ala.2008); see also Smith v. Jones, 554 So.2d 1066 (Ala.Civ.App.1989) (treating the natural parents' appeal from the issuance of an interlocutory order granting an adoption as a petition for a writ of *829 mandamus). In this petition, however, DHR asserts that the juvenile court lacked subject-matter jurisdiction to vacate or modify the May 2005 final judgment, thereby rendering most of its August 2009 judgment void. A void judgment will not support an appeal. Central Alabama Cmty. Coll. v. Robinson, [Ms. 2080475, Dec. 4, 2009] ___ So.3d ___, ___ (Ala. Civ.App.2009).
"`"Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court." Ex parte Integon Corp., 672 So.2d 497, 499 (Ala. 1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So.2d 805 (Ala.2000).'
"Ex parte Liberty Nat'l Life Ins. Co., 888 So.2d 478, 480 (Ala.2003)."
Ex parte Progressive Specialty Ins. Co., 31 So.3d at 663. Because DHR is challenging the subject-matter jurisdiction of the juvenile court, and because it has no other adequate remedy available to it, we determine that we may review this matter pursuant to a petition for a writ of mandamus. Id.

Analysis
The record presented to this court establishes that, on May 18, 2005, a juvenile-court referee determined, among other things, that the father owed DHR $11,347.71 and that he also owed interest in the amount of $2,407.10. The judgment bears the approval of a Montgomery County circuit-court judge and the date of May 19, 2005. Thus, on May 19, 2005, a judge with authority over juvenile matters confirmed the referee's May 18, 2005, child-support-arrearage order. See Rule 2.1, Ala. R. Juv. P. (addressing the use of referees, the types of cases referees may be assigned, the duties of referees, and the requirement that a juvenile-court judge confirm or "ratify" the referee's orders). The juvenile court clearly erred in concluding that the referee's May 18, 2005, order had not been properly ratified by a circuit-court judge with authority over juvenile matters, as required by Rule 2.1.
The juvenile court further erred in determining that the May 19, 2005, judgment had never been entered. Before the September 19, 2006, amendment to Rule 58(c), Ala. R. Civ. P., which adopted the electronic-entry method of "entering" a judgment, our Rules of Civil Procedure allowed for multiple methods of entering a judgment:
"Upon rendition of a judgment or order as provided in subdivision (a) of this rule, unless it contains a specific direction otherwise or is subject to the provisions of Rule 54(b), [Ala. R. Civ. P.,] the clerk shall note such judgment or order forthwith in the civil docket if separately maintained. Notation of a judgment or order on separately maintained bench notes or in the civil docket or the filing of a separate judgment or order constitutes the entry of the judgment or order."
Former Rule 58(c) (emphasis added).
The referee's May 18, 2005, order in favor of DHR, which was rendered by a separate order, was signed by a circuit-court judge on May 19, 2005, and was stamped "filed" by the clerk of the Montgomery Circuit Court on that same date. Thus, the May 2005 judgment against the father and in favor of DHR was entered into the record by the "filing of a separate *830 judgment or order."[2] Former Rule 58(c), Ala. R. Civ. P.
"Generally, a trial court has no jurisdiction to modify or amend a final order more than 30 days after the judgment has been entered, except to correct clerical errors. See Rule 59(e) and Rule 60, Ala. R. Civ. P.; Cornelius v. Green, 477 So.2d 1363, 1365 (Ala.1985) (holding that the trial court had no jurisdiction to modify its final order more than 30 days after its final judgment); Dickerson v. Dickerson, 885 So.2d 160, 166 (Ala.Civ. App.2003) (holding that, absent a timely postjudgment motion, the trial court has no jurisdiction to alter, amend, or vacate a final judgment); and Superior Sec. Serv., Inc. v. Azalea City Fed. Credit Union, 651 So.2d 28, 29 (Ala.Civ.App. 1994) (`It is well settled that after 30 days elapse following the entry of a judgment, the trial court no longer has authority to correct or amend its judgment, except for clerical errors.')."
George v. Sims, 888 So.2d 1224, 1227 (Ala. 2004). See also Ex parte Progressive Specialty Ins. Co., 31 So.3d at 664 (concluding that, because a default judgment was a final judgment that had not been set aside or vacated in response to a properly filed postjudgment motion, the trial court lacked jurisdiction to allow a subsequent amendment to the pleadings); Colburn v. Colburn, 14 So.3d 176 (Ala.Civ. App.2009) (because the father's postjudgment motion was denied by operation of law and no postdivorce proceeding was initiated by either party, subsequent jurisdiction was not vested in the trial court to modify the parties' custody arrangement and the trial court's order purporting to do so was void for lack of subject-matter jurisdiction); Yayman v. FIA Card Servs., N.A., 996 So.2d 845 (Ala.Civ.App.2008) (once available postjudgment relief has been extinguished and a trial court's judgment becomes final, the trial court loses jurisdiction over the matter and may not vacate the judgment without the proper filing of an independent proceeding); and Casey v. McConnell, 975 So.2d 384, 389 (Ala.Civ.App.2007) ("Although, it is well settled that a trial court has no jurisdiction to modify or amend a final order sua sponte more than 30 days after the judgment has been entered, except to correct clerical errors, ... a trial court has jurisdiction to alter, amend, or vacate a judgment pursuant to a motion filed under Rule 59(e), Ala. R. Civ. P.").
In this case, the record contains no indication that any party sought a rehearing of the referee's decision, see Rule 2.1(F), Ala. R. Juv. P. (allowing a party 14 days in which to seek a rehearing of a referee's decision), no indication that an appeal was taken from the May 2005 judgment, and no indication that a party to the May 2005 judgment sought relief in the juvenile court, pursuant to Rule 59 or Rule 60, Ala. R. Civ. P. Accordingly, the juvenile court had no jurisdiction to modify or vacate the May 2005 judgment.[3]
*831 For the reasons stated above, the juvenile court lacked subject-matter jurisdiction to vacate the May 2005 judgment entered in favor of DHR. We therefore issue a writ of mandamus to the juvenile court, directing that all portions of the juvenile court's August 17, 2009, judgment, with the exception of paragraph 5, which does not relate to DHR, be vacated as void.
PETITION GRANTED; WRIT ISSUED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
BRYAN, J., concurs specially.
BRYAN, Judge, concurring specially.
I fully concur in the main opinion and write specially only to note that a writ of mandamus could have been issued to the juvenile court in this case pursuant to either issue raised by the State Department of Human Resources ("DHR"). As the main opinion holds, DHR demonstrated that a writ of mandamus should be issued to the juvenile court because the juvenile court lacked subject-matter jurisdiction to vacate the May 2005 judgment. ___ So.3d ___. Because we granted DHR's petition for a writ of mandamus based on that issue, we did not address the second issue raised by DHRthat the juvenile court lacked subject-matter jurisdiction to order the State treasury to issue funds to an individual. However, I believe that the jurisprudence of this State supports a conclusion that the juvenile court lacked jurisdiction to enter a judgment that ordered the recovery of money from the State treasury. See, e.g., Ex parte Town of Lowndesboro, 950 So.2d 1203, 1206 (Ala. 2006) (citing Ex parte Alabama Dep't of Mental Health & Mental Retardation, 937 So.2d 1018, 1023 (Ala.2006)) ("The appellate courts of this State have generally held that an action may be barred by [Article I,] § 14[, Alabama Constitution of 1901,] if it seeks to recover damages or funds from the State treasury.").
NOTES
[1] Although the juvenile court's judgment was entered against the Montgomery County Department of Human Resources, the State Department of Human Resources filed the petition for a writ of mandamus in this case. The county departments of human resources are state agencies. See Ex parte Department of Human Res., 716 So.2d 717, 718 (Ala.Civ. App. 1998).

"The county department of human resources serve as agents of the State Department of Human Resources; the State Department is empowered to designate the county as its agent and to assist the counties in their various duties when necessary. See § 38-6-2, Ala.Code 1975; Admin. Rules 660-1-2-.01(g) and 660-1-2-.02."
State Dep't of Human Res. v. Estate of Harris, 857 So.2d 818, 819 n. 1 (Ala.Civ.App.2002).
[2] We also note that, in the juvenile court's order, the court references an entry made on the case-action-summary sheet by the referee. Although the juvenile court's order repeatedly refers to the referee's entry on the case-action-summary sheet as having a date of January 18, 2005, it appears from the context of the order that the juvenile court intended to refer to the referee's May 18, 2005, order. Thus, the juvenile court's order provides some indication that the referee's May 18, 2005, order was, in fact, entered on the case-action-summary sheet in case number CS-01-576.
[3] Additionally, in State Department of Human Resources v. M.A.J., 703 So.2d 405 (Ala.Civ. App.1997), this court recognized that, once DHR obtains a valid and final child-support-arrearage judgment in its favor against an obligor parent, DHR is entitled to garnish the obligor parent's funds up to the judgment amount without the need to offer additional proof as to the amount of benefits paid on behalf of the dependent children. Id. at 406-07. In this case, the May 2005 judgment entered in the child-support action was not obtained by DHR on behalf of the mother but was obtained by DHR on its own behalf. Therefore, DHR was not required to prove the amount of benefits it had provided to the mother in order to sustain its right to collect funds from the father and the juvenile improperly required DHR to do so. A vested judgment for a child-support arrearage may be collected just as any other judgment is collected. Cochran v. Cochran, 5 So.3d 1220, 1230 (Ala.2008).